UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN - SOUTHERN DIVISION

ROBERT GORDON, Receiver of the
Estate of GREGORY N. McKNIGHT,
LEGISI MARKETING, INC., AND
LEGISI HOLDINGS, L.LC.,

          Plaintiffs,

vs.

                                          Case No. 09-CV-10772
                                          Hon. Lawrence P. Zatkoff

ELITE CONSULTING GROUP, LLC, a
Florida limited liability company, IVAN
MONSALVE a/k/a IVAN MONSALVES,
MARSHA FRIEDMAN, KAREN L. REDMAN,
TRICIA WITHERSPOON, JANE DOE, JOHN
DOE, and EDGETECH INTERNATIONAL, INC.,
a Nevada corporation,

          Defendants.

| | |
|---|---|
| Charles E. Murphy (P28909) | Nancy L. Kahn (P29907) |
| Edward J. Hood (P42953) | Francis G. Seyferth (P30885) |
| Clark Hill, PLC | Foster, Swift, Collins & Smith, P.C. |
| Attorneys for Plaintiff Robert Gordon | Attorneys for Defendant Karen L. Redman |
| 151 S. Old Woodward Avenue, Suite 200 | 32300 Northwestern Highway, Suite 230 |
| Birmingham, MI 48009 | Farmington Hills, MI 48334 |
| 248-989-5879 / 248-988-2331 | 248-539-9900 / 248-538-3612 (Fax) |

Foster, Swift, Collins & Smith, P.C./Attorneys At Law

### DEFENDANT KAREN L. REDMAN'S MOTION TO DISMISS PLAINTIFFS' CLAIMS AGAINST DEFENDANT KAREN L. REDMAN ONLY PURSUANT TO FR Civ P 12(b)(6)

NOW COMES Defendant Karen L. Redman, by and through her attorneys, Francis G. Seyferth and Nancy L. Kahn of Foster, Swift, Collins & Smith, P.C., and moves this Court to enter an order dismissing Plaintiffs' claims against Karen L. Redman in accordance with F R Civ P 12(b)(6) for the reason that Plaintiffs' claims are not in compliance with the Private Securities

Litigation Reform Act of 1985 ("PSLRA") 15 U.S.C. § 78u-4(b)(1) through 78u-4(b)(4), and Plaintiffs have otherwise failed to state a claim against Defendant Karen L. Redman upon which relief may be granted.  In further support of this Motion, Defendant Karen L. Redman states as follows:

1.     This case arises out of Plaintiffs' complaints of securities fraud based upon statements made by Defendant Tricia Witherspoon and on behalf of Defendant Elite Consulting Group, LLC.

2.     Plaintiffs' Complaint makes **no** allegations regarding any direct or indirect statements by Defendant Karen Redman.

3.     Defendant Karen  Redman's non-defendant employer, as their principal business activity, provides corporate services in the State of Florida for a myriad of companies.  These services include the provision of registered agents for the  acceptance of service of process, the filing of various corporate documents including, but not limited to, articles of organization, annual reports, applications to transact business in the State of Florida, corporate dissolutions, corporate name changes, corporate address changes and applications for Federal Employer Identification Numbers.

4.     On or around August 31, 2006, Defendant Marsha Freidman, or someone on her behalf, retained Karen L. Redman's employer to file documents forming a Limited Liability Company by the name of Elite Consulting Group, LLC ("Elite") in the State of Florida.  Karen L. Redman's employer was also retained to provide a registered agent for Elite.

5.     In connection with the provision of the services described in Paragraph 4, electronic Articles of Organization were filed on behalf of Defendant Elite listing an affiliate of

2

53702-00001 674675-1

Foster, Swift, Collins & Smith, P.C./Attorneys At Law

Ms. Redman's employer as Resident Agent and listing Karen Redman as manager. Under Elite's Operating Agreement, Karen Redman's authority was limited to the execution, delivery and filing of the certificate of formation of the company and other certificates and reports as requested by the Elite. Defendant Elite's Operating Agreement listed Defendant Marsha Friedman as the sole member of Elite and specified that the management of Elite was exclusively vested in Marsha Friedman.

6.      Defendant Karen L. Redman had no knowledge of the nature of the business conducted by Elite, the identity of the employees of Elite, or any practices or conduct of the employees of Elite.

7.      Under the Private Securities Litigation and Reform Act, (PSLRA), all complaints alleging violations of the Security Exchange Act of 1934 15 U.S.C. § 78(j) and 78(t), SEC Rule 10b-5, 17 C.F.R. § 240.10b-5 and the Securities Act of 1933 15 U.S.C. § 77q(a) are required to plead specific facts in support of the elements of securities fraud against each of the defendants. Failure to do so requires dismissal of the claims with prejudice. Dismissal typically occurs in connection with a Motion filed pursuant to F R Civ P 12(b)(6).

8.      The intent of PSLRA is to require plaintiffs and their counsel to investigate and obtain support for securities fraud claims prior to filing. "Group allegations" against several "defendants" do not satisfy the requirements of the Act.

9.      In the subject Complaint, Plaintiffs do not allege specific facts with respect to Defendant Karen Redman that would support **any** of the required elements of securities fraud. In the absence of allegations of specific facts in support of their claims against Karen Redman, Plaintiffs' claims against her are required to be dismissed with prejudice under PSLRA.

*3*

Foster, Swift, Collins & Smith, P.C./Attorney At Law

WHEREFORE, for the reasons stated in this Motion and her supporting Brief, Defendant Karen L. Redman respectfully requests that this Court enter an order granting her Motion for Dismissal of the claims against her with prejudice in accordance with F R Civ P 12(b)(6) and PSLRA.

## BRIEF IN SUPPORT

### Introduction

The Private Securities Litigation Reform Act of 1985 ("PSLRA") 15 U.S.C. § 78 U-4(b)(1) was enacted with the intent of reducing the number of defendants named in unsupported securities fraud claims. "Group pleading" (i.e. factual allegations against groups of defendants without specific factual allegations as to the involvement of each defendant in each of the required elements of securities fraud) does not satisfy the requirement of PSLRA.

In the subject case, this Court has appointed Plaintiff, Robert Gordon, as Receiver to recover assets of the Estate of Gregory N. McKnight for the benefit of investors which Mr. McKnight allegedly defrauded. The Complaint alleges that employees of Elite, specifically Trisha Witherspoon, made false representations to Mr. McKnight in connection with the sale of certain securities to him.

The Complaint makes "group allegations" that purport to include Karen Redman, but the Complaint does not make specific allegations against Karen Redman that meet the pleading requirements of PSLRA. Accordingly, the claims against Karen Redman are required to be dismissed with prejudice.[1]

---

[1] Both the Plaintiff Receiver, and this Court in directing his actions, may wish to note that the pursuit of an unsupported claim against Defendant Karen L. Redman, in violation of the PSLRA, serves only to increase the fees incurred by the Plaintiff Receiver and therefore erode any recovery for McKnight's defrauded investors. Moreover, it does not serve justice to allow the Estate's assets to be used to pursue a claim against someone who was not acquainted with the other Defendants or had no control whatsoever over their alleged efforts to sell securities.

*4*

Foster, Swift, Collins & Smith, P.C./Attorneys At Law

### Facts

Defendant Karen L. Redman is employed by GEC Group, LLC ("GEC") (Global Entity Consulting). GEC is the Florida affiliate of National Registered Agents, Inc. ("NRAI").

NRAI and its affiliates are the third largest provider of resident agent and corporate filing services in the United States. Like its competitors, NRAI and its affiliated entities offer a variety of corporate services including the provision of resident agents for receipt of service of process, as well as services in connection with filing of documents for corporate formation, dissolution, annual reports, name changes etc. in accordance with established fee schedules.

GEC was hired by or on behalf of Defendant Marsha Freidman to provides services in connection with filing documents with the Florida Department of State, Division of Corporations for the formation of Elite Consulting Group, LLC ("Elite") and to provide a resident agent for Elite.

In connection with the provision of these services, NRAI was named as Resident Agent for Elite. Karen Redman was referenced as a manager of Elite in its Articles of Organization and other corporate filings. Her authority was limited in Elite's unsigned Operating Agreement (which is valid under Florida law and relied upon in Plaintiffs' Complaint, ¶ 10) to specific activities with respect to the formation of and the filing of corporate documents for Elite. Elite's Operating Agreement states as follows:

> "Karen L. Redman is hereby designated as the authorized person, within the meaning of the Act to execute, deliver and file the Certificate of Formation of the Company, and together with other persons that may hereafter be designated, such other certificates as may be necessary for the Company to qualify to do business in any jurisdiction in which the Company may wish to conduct business."

The Operating Agreement of Elite also specifically provided that **"the management of the Company shall be vested in the Member" (i.e. Marsha Friedman).** Karen L. Redman

53702-00001 674675-1

Foster, Swift, Collins & Smith, P.C./Attorneys At Law

was given no management authority.  (A copy of the Operating Agreement, as referenced and relied upon in Plaintiffs' Complaint is attached as Exhibit A).

Karen Redman did not know any of the Defendants, nor did she have any authority (expressed, implied or apparent) over them. She had no specific information regarding their type of business, their day-to-day operations or any statements which they may have made to their clientele.

### Plaintiffs' Complaint

Plaintiffs' Complaint makes no specific allegations whatsoever regarding any representations made by Defendant Karen L. Redman.

In Plaintiffs' General Allegations ¶'s 18-34, Defendant Karen Redman is not specifically mentioned.  Plaintiffs do make some references to "Defendants" as a group.  However, there are no specific alleged facts  regarding any statements by or acts of Karen Redman, with the exception of the filing of Formation and Dissolution documents for corporations in the State of Florida.

Plaintiff's First Claim (violations of Section 10b of the Exchange Act and Rule 10b-5), paragraphs 35-43, does not mention Defendant Karen Redman.  She is apparently intended by Plaintiffs to be included in the conclusory allegations against the defendants as a group.

The only specific reference to Karen Redman in Plaintiffs' Second Claim (for violations of § 20(a) of the Exchange Act) is the conclusory allegation that Redman was a "controlling person of Elite within the meaning of § 20(a) of the Exchange Act."  Plaintiffs' Complaint alleges no specific facts in support of this bare legal conclusion.

Foster, Swift, Collins & Smith, P.C./Attorneys At Law

53702-00001 674675-1

Plaintiffs' Third Claim alleges violation of Nevada Uniform Securities Act, (Plaintiff's Complaint Paragraphs 47-58). The only specific references to Karen Redman in Plaintiffs' Third Claim are the conclusory allegations contained in ¶ 51 and 56 that she "directly or indirectly controlled Elite." There are no specific allegations of representations made or actions taken by Defendant Karen Redman.

Plaintiffs' Fourth Claim (alleging violations of the Michigan Uniform Securities Act), Paragraphs 59-65 of Plaintiff's Complaint, makes no specific reference to Karen Redman.

Plaintiffs' Fifth Claim (Fraud), Paragraphs 66-70 of Plaintiff's Complaint, makes no specific reference to Karen Redman.

Plaintiffs' Sixth Claim (Innocent Misrepresentation), Paragraphs 71-74 of Plaintiff's Complaint, makes no specific reference to Karen Redman.

Plaintiffs' Seventh Claim (violation of Florida Securities Transaction Act), Paragraphs 75-82 of Plaintiff's Complaint, makes only one reference to Karen Redman. In Paragraph 79 all of the Defendants are listed by name in connection with a conclusory allegation that they offered and sold securities without being registered. No specific facts are alleged as to any involvement by Karen Redman in the sale of securities.

The only other references to Karen Redman are in the introductory paragraphs to Plaintiff's Complaint as follows:

- Karen Redman was the registered agent of Elite (Paragraph 8).
- The conclusory statement that Karen Redman was a "manager" of Elite. (Paragraph 8).
- The allegation that Defendant Ivan Monsalve directed Karen Redman and NRAI to file corporate documents forming and dissolving two corporations. (Paragraph 9).

53702-00001 674675-1

— Foster, Swift, Collins & Smith, P.C./Attorneys At Law —

None of the allegations in Plaintiff's Complaint meet the requirements of PSLRA.

## ARGUMENT I

### PLAINTIFFS' FEDERAL SECURITIES FRAUD CLAIMS AGAINST KAREN REDMAN MUST BE DISMISSED BASED UPON THE PRIVATE SECURITIES LITIGATION REFORM ACT ("PSLRA").

The pattern of making conclusory allegations, without factual support, against groups of defendants has been a historic problem in securities fraud cases. This problem was addressed by the PSLRA , 15 U.S.C. § 78u-4(b)(1). PSLRA was intended to curb abuses of the Section 10b private action, including nuisance filings and the targeting of deep pocket defendants. *Tellabs, Inc. v. Makor,* 551 U.S. 308, 127 S. Ct. 2499, 2508, 168 L. Ed. 2d 179 (2007).

PSLRA requires a securities fraud Complaint, such as the one before this Court, to include specific factual allegations in support of each required element of the securities fraud claim. PSLRA mandates dismissal of complaints that do not meet the PSLRA pleading requisites. 15 U.S.C. § 78u-4(b)(3).

Regarding Defendant Karen Redman, PSLRA requires supporting factual allegations with respect to each of the following elements of a securities fraud claim: (1) the alleged misleading statements and omissions; (2) control over the person alleged to have made the statements or omissions; (3) the required scienter or state of mind of each defendant; and (4) loss causation with respect to the actions of the defendant.

### A.      Element No. 1 - Misleading Statements and Omissions

Plaintiffs' securities fraud claims are brought under Section 10b and Rule 10b-5, alleging violations of the Security Exchange Act of 1934 15 U.S.C. § 78(j) and 78(t), SEC Rule 10b-5,

*8*

53702-00001 674675-1

─Foster, Swift, Collins & Smith, P.C./Attorneys At Law─

17 C.F.R. § 240.10b-5 and the Securities Act of 1933 15 U.S.C. § 77q(a) .  (Plaintiff's Complaint Paragraph 15.)

The foundation of such claims must include allegations of misleading statements or omissions.  The required elements of proof for this type of claim are the following:  a.) the misstatement or omission of a material fact made in connection with the purchase or sale of securities,  (b) made with the required scienter, (c) upon which the plaintiff justifiably relied and (d) which proximately caused the plaintiff's injury.  See *Zaluski v. United American Healthcare Corp.,* 527 F. 3d 564, 571 (6th Cir.  2008) and *In Re Comshare Inc. Securities Litigation,* 183 F.3d 542, 548 (6th Cir. 1999).  (Both affirming this Court's dismissal of such a claim under F R Civ P 12(b)(6) and based upon  PSLRA. )

PSLRA's pleading requirements with respect to the allegations of misleading statements and omissions are set forth in 15 USCA § 78u-4(b) entitled **Requirements for securities fraud actions.**  The specific statutory requirements for pleading the element of misleading statements or omissions includes the following:

> …[T] complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

Plaintiff's complaint makes no allegations regarding any statements or omissions made by Karen Redman.

### B.    Element No. 2 - Control Over The Person Alleged to Have Made the Statement or Omission.

Plaintiff complaint makes the conclusory allegation that Defendant Karen Redman acted as a controlling person of Elite within the meaning of Section 20a of the Exchange Act. (Plaintiffs' Complaint, Paragraph 45).

Foster, Swift, Collins & Smith, P.C./Attorneys At Law

53702-00001 674675-1

§ 20(a) of the Securities and Exchange Act provides as follows:

> "The person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action. 15 U.S.C. § 78t(a).

In the case before this Court the Complaint does not allege any facts establishing that Defendant Karen Redman "controlled" another person who committed an underlying violation of the Act. While Karen Redman was listed as a manager in the Articles of Organization for Elite, there are no specific facts alleged which suggest that she had any control over the actions of Tricia Witherspoon or anyone else at Elite who was involved with the sale of securities.

This Circuit has ruled that, at a bare minimum, to establish control person liability, a plaintiff needs to allege facts that permit a reasonable inference that the defendant **actually participated** in the operations of the controlled person in general, and that the defendant possessed the power to control the specific transaction or activity upon which the primary violation is predicated. *Sanders Confectionary Products, Inc. v. Heller Fin. Inc.*, 973 F.2d 474, 484 (6th Cir. 1992). In *Sanders,* the plaintiff's claim alleging "control person" liability was dismissed because plaintiff only pled "participation" without allegations establishing actual control. (See also, *Herm v. Stafford*, 466 F.Supp. 439 (W.D. Ky. 1979), (no control person liability when the vice president and supervisor did not actually participate in the operations of the controlled person); *Howard v. Everex Sys., Inc.*, 228 F.3d 1057 (9th Cir. 2000), (control person liability requires a showing that the director was active in day-to-day affairs and exercised specific control over the preparation and release of the statements at issue); *Cameron v. Outdoor Resorts of America, Inc.*, 608 F.2d 187 (5th Cir. 1980), (chairman of the board, without effective

*10*

53702-00001 674675-1

day-to-day control and without knowledge, is not liable as a controlling person under the Act); *Hamilton Bank and Trust Co. v. Holliday*, 469 F.Supp. 1229 (N.D. Ga. 1979), (executive Vice President was not a controlling person within the meaning of the Act where he did not have knowledge of, participate in, aid, abet, assist or act as a controlling person in connection with the alleged fraud); *Donohoe v. Consolidated Operating & Prod. Corp.*, 982 F.2d 1130 (7th Cir. 1992), (control requires that a defendant have the practical ability to direct the actions of the people issuing or selling securities); *Middlesex Ret. Sys. v. Quest Software, Inc.*, 527 F.Supp. 2d 1164 (C.D. Cal. 2007), (company's Vice President was not subject to control person liability absent showing that he was in a position to control the primary violator); *In Re Fed. Nat'l Mortgage Ass'n Sec. Derivative and ERISA Litig.*, 503 F. Supp. 2d 25 (D.D.C. 2007), (investors failed to state claims against directors for control person liability because allegations of culpable conduct were not pled with particularized facts, but merely described as allegedly inadequate oversight); *In Re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433 (S.D. N.Y. 2005), (investors failed to state a claim for control liability where investors failed to plead culpable participation of CEO or specific factual allegations supporting the claim that the CEO knew or should have known about the primary violation.)

The case law is clear that an allegation that an individual holds a management title is not a sufficient allegation to demonstrate control. In *D. E. & J Limited Partnership v. Conaway*, 284 F. Supp. 2d 719 (E.D. Mich. 2003), aff'd, 133 Fed. Appx. 994 (6th Cir.2005) the Court confirmed the insufficiency of alleging a management title in support of a claim of "control".

> "First, the mere fact that an individual defendant is an officer or director of the corporation is not enough to invoke the group pleading doctrine. Rather, **the plaintiff must allege with specificity facts demonstrating a specific defendant's personal involvement in the preparation of the allegedly misleading statements or 'operational involvement' with the company;**

*11*

Foster, Swift, Collins & Smith, P.C./Attorneys At Law

> **conclusory allegations that the defendant was 'involved in the day-to-day operations' are insufficient.**" *Conaway, supra*, 284 F.Supp. 2d at 732.

In the case before this Court Plaintiffs' Complaint does not allege specific facts demonstrating Karen Redman's personal involvement in the preparation of the allegedly misleading statements or "operational involvement" with the Company.

Plaintiffs' failure to make specific factual allegations in support of the claim that Karen Redman had "control" over the alleged statements is not a mere oversight. Defendant Karen Redman did not have any knowledge regarding the other Defendants or the operations of Elite. Moreover, Plaintiffs are on notice that Karen Redman's authority was limited to acting as registered agent and filing of corporate documents. In fact, Plaintiffs' Complaint at Paragraph 10 specifically relies on the Elite Operating Agreement and arguably incorporates it by reference. The Operating Agreement specifically limits Karen Redman's authority to the filing of documents of formation and certifications and vests full management and control in member Marsha Freidman.

Elite's Operating Agreement states as follows:

> "Karen L. Redman is hereby designated as the authorized person, within the meaning of the Act to execute, deliver and file the Certificate of Formation of the Company, and together with other persons that may hereafter be designated, such other certificates as may be necessary for the Company to qualify to do business in any jurisdiction in which the Company may wish to conduct business."

The Operating Agreement of Elite also specifically provided that **"the management of the Company shall be vested in the Member" (i.e. Marsha Friedman).** Karen L. Redman was given no management authority.

53702-00001 674675-1

Plaintiffs' failure to make more specific factual allegations regarding Karen Redman's control of the alleged securities fraud is fatal to their claims against Karen Redman.

### C.   Element No. 3 - Scienter

The specific requirements under PSLRA for pleading the element of "state of mind" in securities fraud cases is set forth in 15 U.S.C. Section 78u-4(b)(2) as follows:

> "(2)   Required state of mind
>
> In any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, **the complaint shall**, with respect to each act or omission alleged to violate this chapter, **state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind**." (Emphasis supplied).

The Sixth Circuit has ruled that a plaintiff must, as a threshold matter, allege in his complaint that the defendant acted with sufficient scienter. *In re Comshare, supra,* 183 F. 3rd at 548.   The Court in *Comshare* specified that if the Plaintiff does not meet the PSLRA pleading requirement (i.e. "stat(ing) with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind"), the Court may, on Defendant's motion, dismiss the case. *Id.*[2]   In the case before this Court, the Plaintiff has made no allegations in support of the requisite scienter with respect to Defendant Karen Redman.

The requisite scienter for this type of securities fraud action was recently explained by the United States Supreme Court.  In order to establish liability under 10(b) and Rule 10(b)-5, a private plaintiff must prove that the defendant acted with scienter, 'a mental state embracing

---

[2] In securities fraud actions based upon a defendant's position as officer or director, the plaintiff must plead specific facts demonstrating that each defendant was actually "on notice" of the misrepresentations. *In re Comshare, supra,* 183 F. 3rd at 553.

Foster, Swift, Collins & Smith, P.C./Attorneys At Law

53702-00001 674675-1

intent to deceive, manipulate or defraud.'" *Tellabs, Inc. v. Makor Issues and Rights, Ltd.*, 551 U.S. 308,  127 S. Ct. 2499, 2507, 168 L.Ed. 2d 179 (2007).

In the determination as to whether scienter has been sufficiently pled, the Court must consider the Complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, including documents incorporated into the Complaint by reference and matters of which a court may take judicial notice.  *Tellabs, Inc., supra,* 127 S. Ct. at 2509.  The inquiry "is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets the standard".  *Id.* (Emphasis in original).  The Court must take into account plausible opposing inferences. *Id.*  As further stated by the United States Supreme Court:

> "…Congress did not merely require plaintiffs to provide a factual basis for [their] scienter allegations,…i.e. to allege facts from which an inference of scienter rationally *could* be drawn.  **Instead, Congress required plaintiffs to plead with particularity facts that give rise to a *strong*- i.e., a powerful or cogent inference.**"
> (Emphasis supplied).  *Tellus, supra,* 127 S. Ct. at 2510.

The Supreme Court observed that motive (or lack thereof) can be a relevant consideration with respect to scienter and that "personal financial gain may weight heavily in favor of a scienter inference…" *Tellus, supra*, 127 S. Ct at 2511.   In the case before this Court,  there is no allegation of motive on the part of Karen Redman, nor could there be.  Ms. Redman was employed by GEC, not Elite, and she received no salary or commission from Elite, owned none of the securities alleged to have been sold by Elite, and was not even acquainted with the employees of Elite.  Hence, she had no motive or opportunity to be involved in the alleged misrepresentations.

Foster, Swift, Collins & Smith, P.C./Attorneys At Law

The Supreme Court has further explained that where the plaintiff's complaint lacks precise information that would "distinguish legitimate conduct from culpable conduct," *** "**the omissions and ambiguities count against inferring scienter, for plaintiff must state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind**." *Tellus, supra,* 127 S. Ct at 2511.

In the case before this Court, the analysis required under the rules in *Tellus* could not be more simple. Virtually the only substantive allegation in plaintiff's complaint with respect to Karen Redman was that she was listed as a manager of Elite. (Plaintiff's Complaint, Paragraph 8). This allegation does not provide the strong, cogent and powerful inference of a "mental state embracing the intent to deceive, manipulate or defraud", as required by PSLRA.

Plaintiff's Complaint also "lacks precise information that would distinguish legitimate conduct from culpable conduct." The Complaint contains no allegation that Defendant Karen Redman actually had management authority over, or even knew, the people who allegedly made the misrepresentations. There is no allegation that Ms. Redman actually managed any aspect of the sale of securities or ever knew that Elite was involved with the sale of securities. (On the contrary, the only Operating Agreement with respect to Elite states that Ms. Redman's authority was limited to corporate formation and the filing of corporate documents; all management authority was vested in Marsha Friedman.) Thus, the Complaint does nothing to distinguish legitimate conduct from culpable conduct. The bare allegation that Ms. Redman was "a manager" is insufficient to meet the requirements of PSLRA and the analysis set forth in *Tellus, supra.*

Foster, Swift, Collins & Smith, P.C./Attorneys At Law

*15*

### D.       Element No. 4 - Loss Causation

PSLRA requires that in any private action the plaintiff has the burden of proving that the act or omission of the defendant  caused the loss for which plaintiff seeks to recover damages.

> In any private action arising under this chapter, the plaintiff shall have the burden of proofing that the act or omission of the defendant alleged to have violated this chapter caused the loss for which the plaintiff seeks to recover damages."  15 U.S.C. § 78u-4(b)(4).

Thus, to prevail against Karen Redman in this case, Plaintiffs are required to prove "loss causation," (i.e. that were it not for the defendant's wrong doing, the plaintiff would not have incurred the harm alleged), *Conaway, supra* quoting *Fryling v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 593 F.2d 736, 744 (6th Cir 1979).

As stated in *Conaway*, "in other words, loss causation describes the link between the defendant's misconduct and the plaintiff's economic loss."  *Robbins v. Kroger Properties*, 116 F.3d 1441, 1447 (11Cir 1991) quoted at *Conaway Id* at 748.  The *Conaway* Court noted that (in addition to the specific pleading requirements for loss causation under PSLRA) loss causation cannot be found if an intervening cause was responsible for the plaintiff's economic loss.  *Conaway, supra* at 749.

Here, the only action alleged to have been taken by Karen Redman is the filing of corporate formation documents and other corporate documents containing the word "manager" after her name.  Any loss suffered by the Plaintiffs in this case is due to the intervening actions of the Defendants who allegedly made false representations to plaintiff and sold him apparently worthless securities.  Here, Plaintiffs have not alleged in their Complaint the "requisite causal nexus" between the alleged acts of Defendant Redman and the economic harm suffered by

Foster, Swift, Collins & Smith, P.C./Attorneys At Law

*16*

Plaintiff.  *Conaway, supra* at 749.  As stated by the Court in *Conaway*, Plaintiffs have not pleaded any facts to show that their losses were caused by this defendant's actions as opposed to intervening events.  *Conaway, supra* at 749, note 26.

The Court in *Conaway* ruled that plaintiff's failure to adequately allege the requisite causal nexus between defendant's actions and plaintiff's economic losses required defendant's motions to dismiss to be granted.  The same result is required here.

## ARGUMENT II

### PLAINTIFF'S STATE LAW AND COMMON LAW SECURITIES FRAUD CLAIMS AGAINST KAREN REDMAN MUST ALSO BE DISMISSED IN ACCORDANCE WITH F. R. CIV. P 12(b)(6).

Plaintiffs' failure to sufficiently allege a claim upon which relief may be granted is also fatal to their other claims against Defendant Karen Redman.  Plaintiffs' other counts against Ms. Redman require the same specific allegations that are required for a federal securities fraud claim.  More specifically:

### A.    *Plaintiffs' Third, Fourth and Seventh Claims, for Violation of the Nevada Uniform Securities Act, the Michigan Uniform Securities Act, and the Florida Securities Transaction Act Must be Dismissed.*

These claims make no specific allegations whatsoever with respect to Karen Redman. There is no allegation that Ms. Redman made any misrepresentations, had any knowledge of the other Defendants' securities sales generally, or the alleged misrepresentations specifically.

The Uniform Securities Acts, as enacted by various states, are based upon each state's election to enact laws paralleling Rule 10b-5.  The interpretation of such state acts have therefore been held to be intended as consistent with the federal rule.  The dismissal of a plaintiff's 10b-5 claim also results in the dismissal of the corresponding state claims.  See *Shivers v. Amerco,* 670

—Foster, Swift, Collins & Smith, P.C./Attorneys At Law

53702-00001 674675-1

F. 2d 826, 831 (9th Cir. 1982), interpreting the Securities Acts of Arizona, Nevada, Oregon and Washington. See also, *Connellan v. Himelhoch,* 506 F. Supp 1290, 1299 (E.D. Mich 1981), interpreting Michigan's Uniform Securities Act. See *Ward v. Atlantic Security Bank,* 777 So. 2d 1144, 1147 (Fla. 2001), interpreting Florida's Securities Act.

Accordingly, the dismissal of Plaintiffs' federal securities claims should result in the corresponding dismissal of Plaintiffs' state securities claims.

### B. Plaintiffs' Fifth Claim (Fraud) and Plaintiffs' Sixth Claim (Innocent Misrepresentation) Must be Dismissed.

Both the Michigan Court Rules and the Federal Rules of Civil Procedure require claims of fraud and mistake to be stated with particularity. MCR 2.112 (B)(2) ; F. R. Civ. P 9(b).

Plaintiffs' Claims for Fraud and Misrepresentation make no reference to Defendant Karen Redman whatsoever. In fact, the Complaint specifies that the alleged fraudulent or innocent misrepresentations were made by others. Accordingly, these counts have failed to state a claim with respect to Defendant Karen Redman and must therefore be dismissed.

### Relief Requested

If the pleading requirements under PSLRA have not been met, the Court is required to dismiss Plaintiff's Complaint. 15 U.S.C.A. Section 78u-4(b)(3) states:

### A. Dismissal for failure to meet pleading requirements

In any private action arising under this chapter, the court shall, on the motion of any defendant, dismiss the complaint if the requirements of paragraphs (1) and (2) are not met.

Defendant Karen Redman requests dismissal of Plaintiff's complaint as required by PSLRA and for the reasons otherwise stated in this Motion and Brief.

Foster, Swift, Collins & Smith, P.C./Attorneys At Law

53702-00001 674675-1

PSLRA also requires a Stay of Discovery pending the determination of a Motion to Dismiss.  78u-4(b)(3)(B) states as follows:

**B.**     **Stay of discovery**

In any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party.

Defendant Karen Redman requests a stay of discovery pending the Court's decision on this Motion as required by PSLRA.

## CONCLUSION

For the reasons stated in this Motion and Brief, Plaintiffs' Complaint fails to state a claim against Defendant Karen Redman upon which relief can be granted and therefore should be dismissed with prejudice pursuant to F. R. Civ. P. 12(b)(6) and PSLRA.

Respectfully submitted,

**FOSTER, SWIFT, COLLINS & SMITH, P.C.**

By:    /s/ Nancy L. Kahn
Nancy L. Kahn (P29907)
Francis G. Seyferth (P30885)
Attorneys for Defendant Karen L. Redman
32300 Northwestern Highway, Suite 230
Farmington Hills, MI 48334
248-539-9900 / 248-538-3612

Dated:  May 22, 2009

*Foster, Swift, Collins & Smith, P.C.-Attorneys At Law*

*19*

53702-00001 674675-1

# **EXHIBIT A**



# GEC GROUP, LLC
## GLOBAL ENTITY CONSULTING

# Single Member
# LLC Operating Agreement

Page #
27
GEC DOCUMENT PRODUCTION

# LIMITED LIABILITY COMPANY

## OPERATING AGREEMENT

### OF

### ELITE CONSULTING GROUP, L.L.C

This Limited Liability Company Operating Agreement (the "**Agreement**") of Elite Consulting Group, L.L.C., a Florida limited liability company is entered into as of the 1st day of September, 2006 by Marsha Friedman as member ("the Member").

In order to form a limited liability company pursuant to and in accordance with the Florida State Statutes Governing LLC's (the "**Act**"), the Member hereby provides as follows:

**1.      Certain Definitions.**

1.1      "**Certificate of Organization**" means the document filed with the Florida Secretary of State required to form a limited liability company in Florida.

1.2      "**Fiscal Year**" shall be from January 1 through December 31 of each year until or unless changed by Member.

1.3      "**Person**" whether capitalized or not, means any individual, sole proprietorship, joint venture, partnership, corporation, company, firm, bank, association, cooperative, trust, estate, government, governmental agency, regulatory authority, or other entity of any nature.

**2.      Organization.**

2.1      Name. The name of the limited liability company formed hereby shall be Elite Consulting Group, LLC (the "**Company**").

2.2      Purpose. The Company is formed for the object and purpose of, and the nature of the business to be conducted and promoted by the Company, is engaged in any lawful act or activity for which limited liability companies may be formed under the Act (including with our without limitation, [BRIEFLY DESCRIBE SERVICES]), and engaging in any and all activities necessary or incidental to the foregoing.

2.3      Registered Office; Registered Agent. The address of the registered office of the Company in the State of Florida is c/o NRAI Service Inc. The name and address of the registered agent of the Company for service of process on the Company in the State of Florida is c/o NRAI Services Inc. 2731 Executive Park Drive Weston Florida, 33331.

2.4    Term. The term of the Company shall commence on 08/31/2006 and shall have perpetual existence unless it shall be dissolved and its affairs shall have been wound up as provided in Section 9 (Dissolution and Winding Up of Business).

2.5    Qualification in Other Jurisdictions. The Company may register in any other jurisdiction upon the approval of the Member.

2.6    Bank Accounts. All funds of the Company shall be deposited in one or more accounts with one or more recognized financial institutions in the name of the Company, at such locations as shall be determined by Member. Withdrawal from such accounts shall require the signature of such person or persons as Member may designate.

## 3.    Accounts and Records.

3.1    Records and Accounting; Reports; Fiscal Affairs. Proper and complete records and books of accounting of the business of the Company, including a list of names, addresses and interests of all Members, shall be maintained at the Company's principal place of business.

The books and records of the Company shall be kept on cash basis of accounting, and the cash basis of accounting shall be followed by the Company for federal income tax purposes.

3.2    Fiscal Year End. The fiscal year end shall be December 31.

3.3    Keeper of the Books. At all times during the term of existence of the Company Marsha Friedman , in her capacity as Member, shall keep or cause to be kept the books of accounts referred to in Section 3.1 (Records and Accounting), and the following:

(a)    A current list of the full name and last known business or residence address of each Member

(b)    A copy of the Certificate of Organization, as amended;

(c)    Executed counterparts of this Agreement, as amended;

(d)    Any powers of attorney under which the Company takes action;

(e)    Copies of the Company's federal, state, and local income tax or information returns and reports, if any, for the six (6) most recent taxable years;

(f)    Financial statements of the Company for the six (6) most recent fiscal years; and

(g)    All Company records as they relate to the Company's internal affairs for the current and past four (4) fiscal years.

4. **Member**. The name and business address of the Member is as follows:

NAME                         ADDRESS

MARSHA FRIEDMAN              3060 N.E. 190TH STREET

                            STE 201

                            AVENTURA, FL. 33180

5. **Powers**. The Company shall have the power and authority to do any and all acts necessary or convenient to or in furtherance of the purposes described in Section 2 hereof, including all power and authority, statutory or otherwise, possessed by, or which may be conferred upon, limited liability companies under the laws of the Florida.

6. **Management**. The management of the Company shall be vested in the Member. The Member shall have the full power and authority to authorize, approve or undertake any action on behalf of the Company and to bind the Company without the necessity of a meeting. In connection with the foregoing, the Member is authorized and empowered:

a) To appoint by written designation filed with the records of the Company, one or more persons to act on behalf of the Company as officers of the Company with such titles as may be appropriate including the titles of President, Vice President, Treasurer, Secretary and Assistant Secretary; and

b) To delegate any and all power and authority with respect to the business and affairs of the Company to any individual or entity, including any officers or employees of the Company.

Any person appointed as an officer of the Company with a title customarily held by an officer of a corporation shall have the same power and authority to act on behalf of the Company as an officer holding the same title would customarily have in a corporation organized under the laws of the Florida. Karen L Redman is hereby designated as the authorized person, within the meaning of the Act, to execute, deliver and file the Certificate of Formation of the Company, and together with other persons that may hereafter be designated, such other certificates as may be necessary for the Company to qualify to do business in any jurisdiction in which the Company may wish to conduct business.

7.    **Reliance by Third Parties.** Any person or entity dealing with the Company may rely upon a certificate signed by any Secretary or Assistant Secretary of the Company, or signed by any Secretary or Assistant Secretary of the Company as to:

a)  the persons who or entities which are authorized to execute and deliver any instrument or document of or on behalf of the Company, and

b)  the persons who or entities which are authorized to take any action or refrain from taking any action as to any matter whatsoever involving the Company.

8.    **Dissolution.** The Company shall have perpetual existence unless it shall be dissolved and its affairs shall have been wound up upon (a) the written consent of the Member, (b) the resignation, bankruptcy or dissolution of the Member or (c) the entry of a decree of judicial dissolution

9.    **Capital Contributions.** The Member has contributed $_____ in [cash/property/services], as its initial capital contribution to the Company ("**Capital Contribution**").

10.    **Additional Contributions.** The Member may make, but shall not be required to make, any additional capital contributions to the Company.

11.    **Allocation of Profits and Losses.** The Company's profits and losses shall be allocated to the Member.

12.    **Distributions.** Distributions shall be made to the Member at the time and in the aggregate amounts as determined by the Member.

13.    **Assignment.** The Member may assign its limited liability company interest to any person, which person shall become a Member upon the filing of the instrument of assignment with the records of the Company.

14.    **Resignation.** The Manager may resign from the Company at any time by written resignation to the Member. Upon such resignation, the vacancy shall be filled by the Member.

15.    **Amendments.** This Agreement may be amended or restated from time to time by the Member.

16.    **Liability of Member.** The Member shall not have any liability for the obligations or liabilities of the Company except to the extent provided by the Act.

17.    **Governing Law.** This Agreement and all rights and remedies thereunder, shall be governed by and construed under the laws of the State of Florida.

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, has duly executed this Limited Liability Company Agreement as of the date and year first aforesaid.

_____

Marsha Friedman

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN - SOUTHERN DIVISION

ROBERT GORDON, Receiver of the
Estate of GREGORY N. McKNIGHT,
LEGISI MARKETING, INC., AND
LEGISI HOLDINGS, L.LC.,

        Plaintiffs,

vs.

                                        Case No. 09-CV-10772
                                        Hon. Lawrence P. Zatkoff

ELITE CONSULTING GROUP, LLC, a
Florida limited liability company, IVAN
MONSALVE a/k/a IVAN MONSALVES,
MARSHA FRIEDMAN, KAREN L. REDMAN,
TRICIA WITHERSPOON, JANE DOE, JOHN
DOE, and EDGETECH INTERNATIONAL, INC.,
a Nevada corporation,

        Defendants.

| | |
|---|---|
| Charles E. Murphy (P28909) | Nancy L. Kahn (P29907) |
| Edward J. Hood (P42953) | Francis G. Seyferth (P30885) |
| Clark Hill, PLC | Foster, Swift, Collins & Smith, P.C. |
| Attorneys for Plaintiff Robert Gordon | Attorneys for Defendant Karen L. Redman |
| 151 S. Old Woodward Avenue, Suite 200 | 32300 Northwestern Highway, Suite 230 |
| Birmingham, MI 48009 | Farmington Hills, MI 48334 |
| 248-989-5879 / 248-988-2331 | 248-539-9900 / 248-538-3612 (Fax) |

## CERTIFICATE OF SERVICE

    I hereby certify that on May 22, 2009, I electronically filed Defendant Karen L. Redman's Motion To Dismiss Plaintiffs' Claims Against Defendant Karen L. Redman Only Pursuant to FR Civ P 12(b)(6), and this Certificate of Service with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

        Charles E. Murphy
        Edward J. Hood
        Clark Hill
        255 S. Old Woodward, Fl. 3
        Birmingham, MI 4809
        cmurphy@clarkhill.com

                        s/ Nancy L. Kahn
                        Nancy L. Kahn (P29907)
                        Foster, Swift, Collins & Smith, P.C.
                        Counsel for Defendant Karen L. Redman
                        32300 Northwestern Highway, Suite 230
                        Farmington Hills, MI 48334
                        248-539-9900
                        nkahn@fosterswift.com

Foster, Swift, Collins & Smith, P.C., Attorneys At Law