UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT D. GORDON, RECEIVER OF THE
ESTATE OF GREGORY N. McKNIGHT,
LEGISI MARKETING INC., and LEGISI
HOLDINGS, L.L.C.,

                Plaintiffs,

                                        Case No. 09-CV-10772
vs.                                    HON. GEORGE CARAM STEEH

ELITE CONSULTING GROUP L.L.C.,
a Florida limited liability company, et al.,

                Defendants.

_____/

## ORDER GRANTING IN PART DEFENDANT REDMAN'S MOTION TO DISMISS (# 19) AND DISMISSING COUNTS I, V, AND VI

        Defendant Karen Redman moves to dismiss plaintiff Receiver Robert Gordon's claims premised on violations of state and federal securities laws. Oral argument would not significantly aid the decisional process. Pursuant to E.D. Mich. Local R. 7.1(e)(2), it is ORDERED that the motion be resolved without oral argument.

### I. Background

        Plaintiff Receiver for the Estates of Gregory N. McKnight, Legisi Marketing, Inc., and Legisi Holdings L.L.C.[1] filed a complaint on March 2, 2009, alleging that, during the relevant time period of September 1, 2006 through May 30, 2007, defendant Redman was the manager and registered agent of defendant Elite Consulting Group L.L.C., a Florida limited liability company located in Hallendale, Florida. Defendant Ivan Monsalve allegedly was

---

      [1]    Gordon was appointed Receiver on May 5, 2008 in SEC v. McKnight, No. 08-11887 (E.D. Mich. 2008), a case in which the Securities and Exchange Commission alleges violations of federal securities laws by McKnight and the Legisi entities. Receiver is authorized to pursue this lawsuit on behalf of the Estates.

also a manager and member of Elite.    Defendants Marsha Friedman and Tricia Witherspoon were alleged members of Elite.    Receiver alleges that Elite was not a registered securities broker dealer, and that Monsalve, Friedman, and Witherspoon were not licensed to sell securities.

Receiver alleges that, on February 16, 2007, Witherspoon made a "cold call" to McKnight soliciting the sale of stock in Edgetech International, a Nevada corporation located in Lauderdale By The Sea, Florida.    Witherspoon allegedly faxed McKnight press releases regarding Edgetech which contained numerous misrepresentations and omissions of fact about the company.    On February 28, 2007, Elite faxed a Purchaser Questionnaire to McKnight.    An Elite agent thereafter allegedly called McKnight indicating that more shares of Edgetech were available for sale.    On March 2, 2007, Elite allegedly faxed McKnight an Edgetech Stock Purchase Agreement regarding the purchase of 250,000 shares of restricted Edgetech stock for $62,500.00, with a closing date of March 5, 2007. McKnight allegedly wired $262,000.00 to an Elite bank account at Washington Mutual Bank in early March 2007.    Sometime after April 16, 2007, Edgetech allegedly issued McKnight a stock certificate representing 1,050,000 shares of Edgetech stock.    Elite allegedly filed Voluntary Articles of Dissolution on May 30, 2007.

Receiver alleges violations of the Securities and Exchange Act of 1934, 15 U.S.C. §§ 78(j) and 78(t), SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, and the Securities Act of 1933, 15 U.S.C. § 77q(a).    Specifically, Count I alleges each of the defendants are liable for fraud and a scheme to defraud in violation of § 10(b)(5) of the Exchange Act and Rule 10b-5. Count II alleges the individual defendants are liable under § 20(a) of the Exchange Act as "controlling persons" of Elite.    Count III alleges violations of the Nevada Uniform Securities Act.    Count IV alleges violations of the Michigan Uniform Securities Act.    Count V alleges common law fraud.    Count VI alleges innocent misrepresentation.    Count VII alleges

violations of the Florida Securities Transactions Act.   Receiver seeks recovery of $262,500.00, interest, costs, attorney fees, and exemplary damages.

## II. Motion to Dismiss

Redman begins by arguing that she was employed by non-party GEC Group, LLC, the Florida affiliate of National Registered Agents, Inc. ("NRAI").  Redman states that NRAI offers corporate services such as acting as a company's resident agent, filing annual reports, and filing corporate documents of formation and dissolution.  Redman maintains that defendant Friedman, acting on behalf of Elite, hired GEC on August 31, 2006, to function as Elite's resident agent, and to file corporate documents with the Florida Department of State.  Redman proffers a "Limited Liability Operating Agreement of Elite Consulting Group, L.L.C." ("Operating Agreement") which provides that defendant Friedman is "the Member" of Elite, and that NRAI is Elite's  registered agent.  Defendant's Exhibit A, Page #28.  The "Operating Agreement" further reads:

> **6.  Management.**  The management of the Company shall be vested in the Member.  The Member shall have the full power and authority to authorize, approve, or undertake any action on behalf of the Company and to bind the Company without the necessity of a meeting.  In connection with the foregoing, the Member is authorized and empowered:
>
> a)  To appoint by written designation filed with the records of the Company, one or more persons to act on behalf of the Company as officers of the Company with such titles as may be appropriate including the titles of President, Vice President, Treasurer, Secretary and Assistant Secretary; and
>
> b)  To delegate any and all power and authority with respect to the business and affairs of the Company to any individual or entity, including any officers or employees of the Company.
>
> Any person appointed as an officer of the Company with a title customarily held by an officer of a corporation shall have the same power and authority to act on behalf of the Company as an officer holding the same title would customarily have in a corporation organized under the laws of the [sic] Florida.  Karen L Redman is hereby designated as the authorized person, within the meaning of the Act, to execute, deliver and file the Certificate of Formation of the Company, and together with other persons that may hereafter be designated, such other certificates as may be necessary for the

3

Company to qualify to do business in any jurisdiction in which the Company
may wish to conduct business.

Id., Page #30.  The Operating Agreement provides for Marsha Friedman's signature, but
is unsigned.  Id., Page #32.

Redman argues that, consistent with her limited role at Elite as set forth in the
Operating Agreement, Receiver has failed to allege claims against her upon which relief
may be granted.  Redman asserts that Receiver has not alleged that she made any specific
misrepresentations to McKnight, as required under 15 U.S.C. § 78u-4(b)(1) of the Private
Securities Litigation Reform Act ("PSLRA").  Redman argues that Receiver has also failed
to state with particularity facts giving rise to a strong inference that she acted with scienter,
as required by 15 U.S.C. § 78u-4(b)(2) and Tellabs, Inc. v. Makor Issues and Rights, Ltd.,
551 U.S. 308 (2007).  Redman further asserts that Receiver has failed to allege facts to
support a finding of "loss causation," as required under 15 U.S.C. § 78u-4(b)(4) and D.E.
& J Ltd. Part. v. Conaway, 284 F.Supp.2d 719 (E.D. Mich. 2003), aff'd, 133 Fed. App'x 994
(6th Cir. 2005).  Redman argues that the allegations that she was a "manager" at Elite, and
acted as a "controlling person" under § 20(a) of the Exchange Act, are conclusionary in the
absence of factual allegations supporting a reasonable inference that she actually
participated in the operations of a controlling person at Elite.  Redman maintains that she
did not know the individual defendants Monsalve, Friedman, or Witherspoon, and lacked
any authority over them or the day-to-day operations of Elite.  Redman asserts that she is
entitled to dismissal of the corresponding state statutory claims with the dismissal of
Receiver's federal § 10(b)(5) and Rule 10b-5 claims.  Redman argues the state common
law claims of fraud and innocent misrepresentation are subject to dismissal for failure to
meet the particularity requirements of Federal Rule of Civil Procedure 9(b).

### III. General Standard of Review

Federal Rule of Civil Procedure 12(b)(6) authorizes the court to assess whether the plaintiff has stated a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  In deciding a motion to dismiss under Rule 12(b)(6), the court must construe the complaint in favor of the plaintiff, accept the factual allegations of the complaint as true, and determine whether the allegations present plausible claims.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1964-65 (2007)[2].  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. at 1964-65.  Although the complaint need not contain detailed factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true."  Ass'n of Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545, 548 (6th Cir. 2007) (citing Twombly, 127 S. Ct. at 1965).

In conducting this Rule 12(b)(6) analysis, a district court should first identify any conclusory allegations and bare assertions in the complaint that are not entitled to an assumption of truth.  Ashcroft v. Iqbal, — U.S. — ; 129 S.Ct. 1937, 1951 (2009).  The district court should then consider the factual allegations that are entitled to a presumption of truth and determine if they plausibly suggest entitlement to relief.  Id.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,

---

[2]    In 1957, the Supreme Court articulated a standard for reviewing motions to dismiss, that is, that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  The Supreme Court has now rejected a literal reading of this "no set of facts" standard because "a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery."  Twombly, 127 S.Ct. at 1968.  "The phrase ['no set of facts'] is best forgotten as an incomplete, negative gloss on an accepted pleading standard; once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  Id. at 1969.

the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

Id. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

### IV. Claims

#### A. Count I - Fraud; § 10(b)(5) and Rule 10b-5

Section 10(b)(5) of the Exchange Act provides in pertinent part:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—
>
> (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j.  Rule 10b-5 reads:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility or national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
>
> in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

To allege "a typical private § 10(b) private action a plaintiff must prove (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation."  Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc., 552 U.S. 148, 128 S.Ct. 761, 768

(2008) (citing <u>Dura v. Pharmaceuticals, Inc. v. Broudo</u>, 544 U.S. 336, 341-342 (2005)).  In addition to imposing liability for a defendant's material misrepresentation or omission, § 10(b) also imposes liability for a defendant's manipulative or deceptive acts, provided that that the plaintiff can prove all of the other elements of a § 10(b) cause of action.  <u>Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.</u>, 511 U.S. 164, 167, 177, 179 (1994).  Section 10(b) does not extend to aiding and abettor liability because such would circumvent the § 10(b) requirement of alleging and proving reliance.  <u>Stoneridge</u>, 28 S.Ct. at 768 (quoting <u>Central Bank</u>, 511 U.S. at 180).

The PSLRA imposes heightened pleading requirements for alleging violations of § 10(b)(5) and Rule 10-b(5).  <u>Stoneridge</u>, 28 S.Ct. at 773 (citing 15 U.S.C. § 78u-4(b)); <u>Tellabs, Inc.</u>, 551 U.S. at 321 (citing 15 U.S.C. § 78u-4(b)(1) and (2)).

(b) Requirements for securities fraud actions

(1) Misleading statements and omissions

In any private action arising under this chapter in which the plaintiff alleges that the defendant--

(A) made an untrue statement of a material fact; or

(B) omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading;

the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

(2) Required state of mind

In any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

(3) Motion to dismiss; stay of discovery

(A) Dismissal for failure to meet pleading requirements

In any private action arising under this chapter, the court shall, on the motion of any defendant, dismiss the complaint if the requirements of paragraphs (1) and (2) are not met.

\*          \*          \*

(4) Loss causation

In any private action arising under this chapter, the plaintiff shall have the burden of proving that the act or omission of the defendant alleged to violate this chapter caused the loss for which the plaintiff seeks to recover damages.

15 U.S.C. § 78u-4(b).

Receiver's Complaint does not allege that Redman herself made any untrue statements or omissions of fact, as actionable under Rule 10b-5(b), and as required by § 78u-4(b)(1) to be pleaded with particularity. Receiver admits as much by stating in its brief that, "[d]espite that fact that [Redman] did not make direct statements or omissions to McKnight she is responsible for the false statements or omissions because she created and managed Elite." June 26, 2009 Response Brief, at 8. In stating this claim under § 10(b) and Rule 10b-5, Receiver relies on the allegations in the Complaint that the "manager and the registered agent of Elite at all times was Karen L. Redman," Complaint, ¶ 8, at 2, and that

> Ivan Monsalve aka Ivan Monsalves ("Monslave") upon information and belief was a manager and member of Elite whose principal place of business at all relevant times was 409 West Hallendale Beach, Suite 206, Hallendale Florida and whose principal residence was 99 S.E. Mizner Blvd., Apt 931, Boca Raton, Florida 33432. Monsalve directed Redman and NRAI Services, Inc. ("NRAI") to form Elite on August 31, 2006 and to dissolve Elite on May 30, 2007. During the same time frame Monsalve directed Redman and NRAI to form and quickly dissolve other business entities in Florida, including Premier Asset Management Group LLC (withdrawal of authority to transact business on June 18, 2007).

Complaint, ¶ 9, at 3. Receiver also proffers documentary evidence indicating that Redman was a "managing member" of Elite. Receiver argues that Redman may be held liable

8

under Rule 10b-5(a) and (c) for quickly forming, managing, and dissolving Elite as "a device, scheme, or artifice to defraud," or an "act, practice, or course of business which operate[d] or would operate as a fraud or deceit" in connection with McKnight's purchase of Edgetech stock.  Rule 10b-5(a), (c).

Although Receiver may state an actionable § 10(b)(5) and Rule 10b-5 claim without alleging that Redman herself made a misrepresentation or omission of material fact to McKnight, Receiver must nonetheless allege and prove that Redman's alleged manipulative or deceptive acts — quickly forming and dissolving Elite and other similar companies — were committed with scienter, were relied upon by McKnight when he purchased the Edgetech securities, and were the proximate cause of McKnight's economic loss. Stoneridge, 28 S.Ct. at 768; Central Bank, 511 U.S. at 167, 177, 179; Zaluski v. United American Health Care Corp., 527 F.3d 564, 571 (6th Cir. 2008).  Receiver must allege more than Redman aided and abetted Monsalve, Friedman, or Witherspoon in fraudulently selling Edgetech stock to McKnight. Stoneridge, 28 S.Ct. at 768.  Receiver's argument that Redman may be held legally responsible under § 10(b)(5) and Rule 10b-5 for the other defendants' fraudulent statements and omissions based on Redman's alleged acts of quickly forming and dissolving Elite and other companies is inaccurate; Receiver must prove that McKnight relied upon Redman's *own* alleged deceptive conduct.  See Stoneridge, 28 S.Ct. at 770 (rejecting "scheme liability" under § 10(b)(5) and Rule 10b-5 because the plaintiff must allege and prove that he relied upon the defendant's "own deceptive conduct.").  To the extent Receiver alleges and argues that Redman's alleged acts of quickly forming and dissolving Elite and other companies aided the other individual defendants' in making fraudulent misrepresentations to McKnight, such is not actionable under § 10(b)(5) and Rule 10b-5.  See Central Bank, 511 U.S. at 176 (recognizing that "aiding and abetting liability reaches persons who do not engage in the proscribed activities

9

at all, but who give a degree of aid to those who do.").

Construing the Complaint in a light most favorable to Receiver, and accepting the factual allegations as true, Receiver's factual allegations fail to establish the elements of reliance and proximate cause necessary to sustain a § 10(b)(5) and Rule 10b-5 claim against Redman, even assuming Receiver has pleaded scienter with the specificity required by § 78u-4(b)(2). Iqbal, 129 S.Ct. at 1951; Twombly, 127 S.Ct. at 1964-65. The court makes clear that it does not apply a heightened pleading requirement under 15 U.S.C. § 78u-4(b) in reaching this conclusion. Receiver's allegations of reliance and causation are linked to the alleged material misrepresentations and omissions made about the Edgetech stock, statements admittedly not made by Redman. See Complaint, ¶¶ 40 -41, at 1-2. Receiver does not allege that McKnight knew that Elite was formed on September 1, 2006, or that McKnight relied on the September 1, 2006 formation of Elite in purchasing the Edgetech stock in March and April 1997. Receiver does not allege that McKnight reasonably relied on Elite's corporate existence extending - beyond its May 30, 2007 dissolution. Receiver does not allege that the alleged "artificially inflated" price of the Edgetech stock was somehow connected to the formation or dissolution of Elite or other similar companies, or that Elite's formation and dissolution was a proximate cause of McKnight's losses. Stoneridge, 28 S.Ct. at 768; Central Bank, 511 U.S. at 167, 177, 179; Zaluski, 527 F.3d at 571. For the same reasons expressed by the Supreme Court in Stoneridge, Receiver's reliance on In re Enron Corp. Securities, Derivative & "ERISA" Litigation, 439 F.Supp.2d 692 (S.D. Tex. 2006) and SEC v. Coffey, 493 F.2d 1304, 1313-15 (6th Cir. 1974) for "scheme liability" is misplaced. See Stoneridge, 28 S.Ct. at 770. Receiver's argument that § 10(b)(5) and Rule 10b-5 violations encompass conduct beyond disclosure violations, Benzon v. Morgan Stanley Distributors, Inc., 420 F.3rd 598, 610 (6th Cir. 2005), does not displace the requisite proofs of reliance and causation resulting from

10

such conduct.  Redman is entitled to dismissal of Receiver's § 10(b)(5) and Rule 10b-5

claim as alleged in Count I absent factual allegations that plausibly support the requisite

elements of reliance and causation.  Iqbal, 129 S.Ct. at 1951; Twombly, 127 S.Ct. at 1964-

65.

### B. Count II - Controlling Person; § 20(a)

"A 'controlling person' shares the liability for violations of securities laws with the

primary violator it controlled."  Sanders Confectionary Products, Inc. v. Heller Financial,

Inc., 973 F.2d 474, 485 (6th Cir. 1992) (citing 15 U.S.C. §§ 77o, 78t).  § 20(a) provides:

> Every person who, directly or indirectly, controls any person liable under
> any provision of this chapter or of any rule or regulation thereunder shall also
> be liable jointly and severally with and to the same extent as such controlled
> person to any person to whom such controlled person is liable, unless the
> controlling person acted in good faith, and did not directly or indirectly induce
> the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a).

> Section 20(a) . . . establishes two requirements for a finding of control person
> liability.  First, the "controlled person" must have committed an underlying
> violation of the securities laws or the rules and regulations promulgated
> thereunder.  Second, the "controlled person" defendant in a Section 20(a)
> claim must have directly or indirectly controlled the person liable for the
> securities law violation.  "Control" is defined as the "possession, direct or
> indirect, of the power to direct or cause the direction of the management and
> policies of a person, whether through the ownership of voting securities, by
> contract, or otherwise."  17 C.F.R. § 230.405.

PR Diamonds, Inc. v. Chandler, 364 F.3d 671, 696-97 (6th Cir. 2004).  To be found a

"controlling person" for purposes of § 20(a) liability, the plaintiff must prove that the

purported controlling person: (1) actually participated in the operations of the defendant

company; and (2) possessed the power to control the specific activity upon which the

primary violation is predicated.  Sanders Confectionary Products, 973 F.2d at 486 (quoting

Metge v. Baehler, 762 F.2d 621, 631 (8th Cir. 1985)).  The plaintiff need not prove as part

of its prima facie case that the purported controlling person actually participated in or

exercised actual control over the predicate securities law violation, consistent with the defendant's statutory right to an affirmative good faith defense on showing lack of scienter and an effective lack of participation.  Metge, 762 F.2d at 631; Howard v. Everex Systems, Inc., 228 F.3d 1057, 1065 (9th Cir. 2000); Maher v. Durango Metals, Inc., 144 F.3d 1302, 1305 (1998).  Normally, whether a person is a "controlling person" is a question of fact. Sanders Confectionary Products, 973 F.2d at 485.

In response to Redman's proffered Operations Agreement representing that defendant Friedman was "the Member" with the power and authority to manage Elite, while Redman was only authorized "to execute, deliver and file the Certificate of Formation of the Company . . . [and] other certificates as may be necessary for the Company to qualify to do business in any jurisdiction[,]" Receiver proffers: (1) August 31, 2006 "Electronic Articles of Organization" signed by Redman as a "member or an authorized representative of a member," representing that Redman is the "managing member[]/manager[]" of Elite with the title of "MGR"; (2) a January 12, 2007 "Limited Liability Company Annual Report" signed by Redman as "MGR," listing "NRAI SERVICES, INC." as Elite's registered agent and Redman as Elite's "managing member[]/manager[]"; (3) May 30, 2007 "Articles of Dissolution" signed by "Karen Redman, MGR" under a line reading "Signatures of the members having the same percentage of membership interests necessary to approve the dissolution," and representing that "[a]ll debts, obligations and liabilities of [Elite] have been paid or discharged . . . [and] [t]here are no suits pending against the company in any court"; and (4) a Florida Department of State website page listing Redman as Elite's "Registered Agent" and "Manager/Member."  Plaintiff's Exhibits 1-4.  This court may  properly consider these documents in deciding Redman's motion to dismiss.  See  Armengau v. Cline, 7 Fed. App'x. 336, 344 (6th Cir. 2001) (citing Jackson v. City of Columbus, 194 F.3d 737, 745 (6th Cir. 1999)).

Construing the Complaint's factual allegations and the proffered documentary evidence in a light most favorable to Receiver, Receiver has alleged plausible claims that Redman actually participated in the day-to-day operations of Elite, and possessed the power to control the alleged material misrepresentations and omissions allegedly made by Elite and the other individual defendants. Iqbal, 129 S.Ct. at 1951; Twombly, 127 S.Ct. at 1964-65; Sanders Confectionary Products, 973 F.2d at 486. Under Florida law, articles of dissolution must be signed by at least one "member" of the limited liability company. See Fla. Stat. § 608.408. Redman is the only person who signed Elite's May 30, 2007 Articles of Dissolution, leading to the conclusion that Redman was in fact a "member" of Elite as well as its "registered agent." Redman *approved* the Articles of Dissolution, exercising the authority of a member of Elite. Redman's proffered Operating Agreement expressly states that "[t]he management of the Company shall be vested in the Member." Redman's use of the title "MGR" when executing the Articles of Dissolution is consistent with the August 31, 2006 "Electronic Articles of Organization" and January 12, 2007 "Limited Liability Company Annual Report" signed by Redman as a "managing member." At best, a question of fact remains whether Redman actually participated in Elite's day-to day operations, notwithstanding her denials and assertions that she did not know Monsalve, Friedman, or Witherspoon. Sanders Confectionary Products, 973 F.2d at 485.

Receiver was not required to allege that Redman actually participated in the predicate securities laws violations of making material misrepresentations and omissions of fact to McKnight regarding the Edgetech stock. Sanders Confectionary Products, 973 F.2d at 486; Metge, 762 F.2d at 631; Howard, 228 F.3d at 1065; Maher, 144 F.3d at 1305. All that is required are factual allegations indicating that Redman, indirectly or directly, possessed the power to control the predicate activities. Id. Consistent with the allegations and documentary evidence giving rise to a plausible finding that Redman actually

participated in the day-to-day operations of Elite, the court also finds a plausible inference arises that Redman, as a managing member of Elite, had the direct or indirect power to control the sale of Edgetech stock to McKnight.  <u>PR Diamonds</u>, 364 F.3d at 696-97; <u>Sanders Confectionary Products</u>, 973 F.2d at 486; <u>Metge</u>, 762 F.2d at 631.  Accordingly, Redman is not entitled to dismissal of Receiver's § 20(a) claim as alleged in Count II.  <u>Iqbal</u>, 129 S.Ct. at 1951; <u>Twombly</u>, 127 S.Ct. at 1964-65.

C. Counts III, IV and VII - State Law Statutory Liability

Redman argues she is entitled to dismissal of Receiver's state law claims under the Nevada Uniform Securities Act, the Michigan Uniform Securities Act, and the Florida Securities Transactions Act, citing <u>Shivers v. Americo</u>, 670 F.2d 826, 831 (9th Cir. 1982), <u>Connellan v. Himelhoch</u>, 506 F.Supp. 1290, 1299 (E.D. Mich. 1981), and <u>Ward v. Atlantic Security Bank</u>, 777 So.2d 1144 (Fla. 3rd. Dist. 2001) for the proposition that Nevada, Michigan, and Florida, respectively, interpret their state securities acts consistent with federal law.

The court has determined that Redman is not entitled to dismissal of Receiver's federal "controlling person" claim under § 20(a).  Receiver's federal § 10(b)(5) and Rule 10b-5 claim against Redman is subject to dismissal because, under federal law, Redman cannot be held liable as an aider and abetter of the allegedly fraudulent statements and omissions made by the other defendants, and because the allegations regarding Redman's own acts of "quickly" forming and dissolving Elite and other companies do not plausibly support the requisite elements of reliance and proximate cause.  <u>Stoneridge</u>, 28 S.Ct. at 770; <u>Central Bank</u>, 511 U.S. at 180.  The cases cited by Redman do not address whether Redman may be held liable under the Nevada Uniform Securities Act, the Michigan Uniform Securities Act, or the Florida Securities Transactions Act as an aider and abettor.  Indeed, <u>Shivers</u> (1982) and <u>Connellan</u> (1981) were decided more than ten years before <u>Central</u>

14

Bank (1994), and more than twenty years before Stoneridge (2008). In Ward, a 2001 case, a Florida appellate court initially recognized "Florida courts will look to interpretations of the federal securities laws for guidance in interpreting Florida's securities laws," then found that Section 517.301 of the Florida Securities Transactions Act provided broader relief than its federal counterpart Rule 10b-5. Ward, 777 So.2d at 1147. Absent further legal development, Redman's proffered authority does not warrant dismissal of Receiver's claims under the Nevada Uniform Securities Act, the Michigan Uniform Securities Act, or the Florida Securities Transactions Act. Iqbal, 129 S.Ct. at 1951; Twombly, 127 S.Ct. at 1964-65.

### D. Counts V and VI - Fraud and Innocent Misrepresentation

Redman argues Receiver's claims of fraud and innocent misrepresentation fail to allege with requisite particularity any false statements she made to McKnight, and therefore fail as a matter of law. Federal Rule of Civil Procedure 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b). To meet the particularity requirements of Rule 9(b), the plaintiff must "specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Frank v. Dana Corp., 547 F.3rd 564, 569-570 (6th Cir. 2008). If the plaintiff fails to allege facts in compliance with the particularity requirement of Rule 9(b), the plaintiff fails to state a claim on which relief may be granted under Rule 12(b)(6). State of Michigan ex rel. Kelley v. McDonald Dairy Co., 905 F.Supp. 447, 450 (W.D. Mich. 1995).

Receiver has not opposed dismissal of its fraud and innocent misrepresentation claims as alleged against Redman. Receiver has not alleged that Redman made any of the alleged false statements or omissions as set forth in the Complaint. Receiver admits that "[Redman] did not make direct statements or omissions to McKnight[.]" June 26, 2009

15

Response Brief, at 8.  Accordingly, Redman is entitled to dismissal of Receiver's fraud and innocent misrepresentation claims as alleged in Counts V and VI as a matter of law. <u>McDonald Dairy Co.</u>, 905 F.Supp. at 450.

### V. Conclusion

For the reasons set forth above, defendant Karen Redman's motion to dismiss is hereby GRANTED, IN PART, as to plaintiff Receiver's claims of fraud and a scheme to defraud in violation of § 10(b)(5) of the Exchange Act and Rule 10b-5 as alleged in Count I, common law fraud as alleged in Count V, and innocent misrepresentation as alleged in Count VI.  Counts I, V, and VI are hereby DISMISSED with prejudice.  The remainder of Redman's motion to dismiss is hereby DENIED.

SO ORDERED.

Dated:  November 18, 2009

<u>s/George Caram Steeh</u>
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
November 18, 2009, by electronic and/or ordinary mail.

<u>s/Marcia Beauchemin</u>
Deputy Clerk

---