UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT D. GORDON, Receiver of
the Estate of Gregory McKnight,
LEGISI MARKETING, INC., AND
LEGISI HOLDINGS, L.L.C.

        Plaintiffs,

vs.

        Case No. 09-10772
        HON. GEORGE CARAM STEEH

ELITE CONSULTING GROUP, L.L.C.
a Florida limited liability company, *et al.,*

        Defendants.

_____/

## ORDER GRANTING DEFENDANT KAREN REDMAN'S MOTION FOR SUMMARY JUDGMENT [#45] AND DENYING PLAINTIFF'S MOTION FOR ORDER ALLOWING ADDITIONAL DISCOVERY [#51]

## I. INTRODUCTION

This case arises out of plaintiff's claims of securities fraud as governed by the Securities Exchange Act of 1934, 15 U.S.C. § §78(j) and 78(t), and the Securities Act of 1933, 15 U.S.C. § 77q(a), as well as violations of Michigan, Florida and Nevada state securities laws.

## II. FACTUAL BACKGROUND

Plaintiff, Receiver for the Estates of Gregory N. McKnight, Legisi Marketing, Inc., and Legisi Holdings L.L.C.,[1] filed a complaint on March 2, 2009, alleging that during the relevant

---

[1] Plaintiff was appointed Receiver on May 5, 2008 in *SEC v. McKnight,* No. 08-11887 (E.D. Mich. 2008), a case in which the Securities and Exchange Commission alleges violations of federal securities laws by McKnight and the Legisi entities. Receiver is authorized to pursue this lawsuit on behalf of the Estates.

time period of September 1, 2006 through May 30, 2007, defendant Redman was the manager and registered agent of defendant Elite Consulting Group L.L.C. (Elite), a Florida limited liability company located in Hallendale, Florida. Defendants Ivan Monsalve and Marsha Friedman allegedly were managers and members of Elite. Defendant Tricia Witherspoon was also an alleged member of Elite. Plaintiff alleges that Elite was not a registered securities broker dealer, and that Monsalve, Friedman, and Witherspoon were not licensed to sell securities. Plaintiff alleges that defendants Monsalve, Witherspoon and Friedman made certain material misrepresentations and omissions in order to induce Gregory McKnight to purchase securities in Edgetech stock. Elite allegedly sold McKnight Edgetech securities at a total cost of $262,500.00. Edgetech allegedly issued McKnight a stock certificate representing 1,050,000 shares of Edgetech stock. Elite filed Voluntary Articles of Dissolution on May 30, 2007.

Defendant Redman is an employee of GEC Group, LLC, n/k/a NRAI Corporate Services, LLC, an affiliate of NRAI Services, Inc. (collectively "NRAI"). NRAI describes itself as a "professional services organization specializing in the complexities and day to day management of special entities established worldwide, to provide our clients with higher profits from their holdings and business operations." NRAI's services include "local staffing of their entity with qualified officers and directors as well as any other staffing needs required by your unique circumstances[]" including provision of resident agents for receipt of service of process, as well as services in connection with filing of documents for corporation formation, dissolution, and annual reports. Additionally, NRAI's services provide "accounting, banking, mail delivery and company site/address, office, record keeping, entity housekeeping, minutes/meetings and staffing with officers, directors and

professional staff."

NRAI was hired by defendant Friedman to provide services in connection with filing documents with the Florida Department of State, Division of Corporations for the formation of Elite and to provide a resident agent for Elite. NRAI was named as a resident agent for Elite. Defendant Redman was referenced as a manager of Elite in its Articles of Organization and other corporate filings. Defendant Redman relies on Elite's Operating Agreement to support her contention that her authority was limited with respect to the day-to-day operations of Elite. The "Operating Agreement" states:

> **6. Management.** The management of the Company shall be vested in the Member. The Member shall have the full power and authority to authorize, approve, or undertake any action on behalf of the Company and to bind the Company without the necessity of a meeting. In connection with the foregoing, the Member is authorized and empowered:
>
> a) To appoint by written designation filed with the records of the Company, one or more persons to act on behalf of the Company as officers of the Company with such titles as may be appropriate including the titles of President, Vice President, Treasurer, Secretary and Assistant Secretary; and
>
> b) To delegate any and all power and authority with respect to the business and affairs of the Company to any individual or entity, including any officers or employees of the Company.
>
> Any person appointed as an officer of the Company with a title customarily held by an officer of a corporation shall have the same power and authority to act on behalf of the Company as an officer holding the same title would customarily have in a corporation organized under the laws of the [sic] Florida. Karen L Redman is hereby designated as the authorized person, within the meaning of the Act, to execute, deliver and file the Certificate of Formation of the Company, and together with other persons that may hereafter be designated, such other certificates as may be necessary for the Company to qualify to do business in any jurisdiction in which the Company may wish to conduct business.

Def.'s Mot. for Summ. J., Ex. C. The Operating Agreement provides that Marsha Friedman is the Member. *Id.* While the Operating Agreement provides for Marsha Friedman's

signature, it is unsigned. *Id.*

### III.  PROCEDURAL HISTORY

On December 22, 2009, this matter was stayed with respect to defendant Marsha Friedman by her filing for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Southern District of Florida, petition number 09-37111-AJC.  Plaintiff filed an adversary proceeding against Ms. Friedman in the Bankruptcy Court based upon allegations raised herein.   A stipulated judgment was entered by plaintiff against Ms. Friedman in the bankruptcy proceeding in the amount of $125,000.00 on June 9, 2010.  This court entered default judgments against defendants Elite Consulting Group, LLC, Ivan Monsalve, Tricia Witherspoon, and Edgetech International, Inc. on December 30, 2009 in the amount of $336,879.00.

On May 18, 2009, defendant Redman filed a motion to dismiss plaintiff's claims, arguing that plaintiff failed to state any claims upon which relief may be granted due to defendant Redman's limited role at Elite as set forth in the Operating Agreement, which provides that Friedman is the "Member" of Elite with the sole power to authorize, approve or undertake actions on behalf of Elite.  On November 18, 2009, this court entered an order granting in part defendant Redman's motion to dismiss, and dismissed count I (violation of Section 10(b)(5) of the Securities Exchange Act of 1934), count V (common law fraud), and count VI (innocent misrepresentation).   The court's November 18, 2009 order denied Redman's motion to dismiss as to count II ("controlling person" liability under Section 20(a) of the Securities Exchange Act) based upon the corporate documents signed by Redman, specifically: (1) Elite's August 31, 2006 Electronic Articles of Organization, (2)  Elite's January 12, 2007 Limited Liability Company Annual Report , (3) Elite's May 30, 2007

Articles of Dissolution, and (4) a Florida Department of State website listing Redman as a

"Manager/Member" for Elite.   The court's November 18, 2009 order held that:

> Construing the Complaint's factual allegations and the proffered documentary evidence in a light most favorable to Receiver, Receiver has alleged plausible claims that Redman actually participated in the day-to-day operations of Elite, and possessed the power to control the alleged material misrepresentations and omissions allegedly made by Elite and the other individual defendants.
>
>     *         *         *
>
> Redman is the only person who signed Elite's May 30, 2007 Articles of Dissolution, leading to the conclusion that Redman was in fact a "member" of Elite as well as its "registered agent."  Redman approved the Articles of Dissolution, exercising the authority of a member of Elite.   Redman's proffered Operating Agreement expressly states that "[t]he management of the Company shall be vested in the Member."  Redman's use of the title "MGR" when executing the Articles of Dissolution is consistent with the August 31, 2006 "Electronic Articles of Organization" and January 12, 2007 "Limited Liability Company Annual Report" signed by Redman as a "managing member."  At best, a question of fact remains whether Redman actually participated in Elite's day-to day operations, notwithstanding her denials and assertions that she did not know Monsalve, Friedman, or Witherspoon.
>
>     *         *         *
>
>   Consistent with the allegations and documentary evidence giving rise to a plausible finding that Redman actually participated in the day-to-day operations of Elite, the court also finds a plausible inference arises that Redman, as a managing member of Elite, had the direct or indirect power to control the sale of Edgetech stock to McKnight.

Dkt. No. 35 at 13-14.  The November 18, 2009 order also denied Redman's motion to

dismiss as to counts III, IV, and VII (securities fraud under Michigan, Florida and Nevada

statutes).

Redman now moves for summary judgment arguing there is no genuine issue of

material fact for trial with respect to the remaining claims against her because (a) she had

no knowledge whatsoever about the nature of the business conducted by Elite or about the

sale of any securities; (b) she had no involvement in the day to day operations of any of the defendants; (c) she had no control over, or authority to control, any of the other defendants or their business operations; (d) her authority was limited to the filing of corporate formation documents with the State of Florida, and other documents as directed by Elite. In support of her motion for summary judgment, Redman provides defendant Marsha Friedman's affidavit, which states that Redman was not acquainted with Marsha Friedman, and that Redman's authority was limited to filing the documents for formation of the LLC, as well as any other certificates necessary to do business in Florida. Defendant Redman also provided her affidavit wherein she states that:

> [p]rior to the receipt of subpoenas in connection with litigation involving the SEC and []Gregory McKnight, I had no knowledge of the nature of the business conducted by Elite, or the practices or conduct of the employees of Elite. Specifically, I had no knowledge, whatsoever, that Elite had any involvement in the sale of securities.

Plaintiff filed a response to defendant Redman's motion for summary judgment on November 2, 2010. Plaintiff also filed a motion for order allowing additional discovery on December 3, 2010. A hearing on these matters was held on December 6, 2010. For the reasons stated on the record at the December 6, 2010 hearing and as more fully set forth below, defendant Redman's motion for summary judgment is granted and plaintiff's motion for order allowing additional discovery is denied.

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See*

*Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001).  The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice.  The procedure is not a disfavored procedural shortcut.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.,* 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial."  *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence

supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. Rather, there must be

evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at

800 (citing *Anderson*, 477 U.S. at 252).

<u>IV.  ANALYSIS</u>

<u>A.  "Controlling Person" Liability under Section 20(a) (Count II)</u>

Defendant Redman argues that her authority was limited to the filing of standard

corporate documents and resident agent services, and that she had no knowledge of, or

control over, any of the other defendants or any sale of securities.  Defendant Redman

argues that plaintiff 's reliance on her designation as a member/manager on the corporate

formation documents is insufficient to establish her involvement in the day-to-day

operations of Elite.

Plaintiff responds[2] that defendant Redman's motion is premature because plaintiff

cannot obtain discovery material from defendant Friedman due to the court's order of

administrative stay as to defendant Friedman, entered after she filed for bankruptcy on

December 7, 2009. Plaintiff maintains that he will be unfairly prejudiced if defendant

Redman is allowed to rely on defendant Friedman's affidavit, while receiver is precluded

from obtaining discovery from Friedman.  Receiver asserts that he should be allowed the

opportunity to conduct discovery regarding the day-to-day operations of Elite and defendant

Redman's level of involvement with Elite.  Plaintiff also asserts that genuine questions of

fact exist.  Plaintiff relies on this court's November 18, 2009 order granting defendant

Redman's motion to dismiss where the court held "Receiver has alleged plausible claims

---

[2]  The arguments set forth in plaintiff's response mirror those presented in his
motion for order allowing additional discovery.

that Redman actually participated in the day-to-day operations of Elite, and possessed the

power to control the alleged material misrepresentations and omissions allegedly made by

Elite and the other individual defendants." Dkt. No. 35 at 13.  Based on this decision,

plaintiff  maintains that the court's order did not rest solely upon Redman's designation as

manager, but found evidence that defendant Redman actually exercised her management

authority by forming and dissolving Elite.  Plaintiff  further argues that  defendant Redman

raises the same arguments here that she raised in her motion to dismiss, which have

already been rejected by this court.   Plaintiff maintains that the corporate documents

constitute evidence sufficient to avoid summary judgment as they demonstrate Redman's

involvement with Elite.

"[A] person who controls a party that commits a violation of the securities laws may

be held jointly and severally liable with the primary violator."  *Maher v. Durango Metals,*

*Inc.*, 144 F.3d 1302, 1304 (10th Cir. 1998); *Sanders Confectionary Products, Inc. v. Heller*

*Financial Inc.*, 973 F. 2d 474, 485 (6th Cir. 1992).  Section 20(a) provides:

> Every person who, directly or indirectly, controls any person liable under any
> provision of this chapter or of any rule or regulation thereunder shall also be
> liable jointly and severally with and to the same extent as such controlled
> person to any person to whom such controlled person is liable, unless the
> controlling person acted in good faith, and did not directly or indirectly induce
> the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a).   To be found a "controlling person" for purposes of § 20(a) liability, the

plaintiff must prove that the purported controlling person: (1) actually participated in the

operations of the defendant company; and (2) possessed the power to control the specific

activity upon which the primary violation is predicated.  *Sanders Confectionary Products*,

973 F. 2d at 486 (quoting *Metge v. Baehler*, 762 F. 2d 621, 631 (8th Cir. 1985)).  The

plaintiff need not prove as part of its prima facie case that the purported controlling person actually participated in or exercised actual control over the predicate securities law violation, consistent with the defendant's statutory right to an affirmative good faith defense on showing lack of scienter and an effective lack of participation. *Metge*, 762 F.2d at 631; *Howard v. Everex Systems, Inc.*, 228 F. 3d 1057, 1065 (9th Cir. 2000); *Maher v. Durango Metals Inc.*, 144 F. 3d 1302, 1305 (1998). "There must be some showing of actual participation in the corporation's operation or some influence before the consequences of control may be imposed.*" Bomarko, Inc. v. Hemodynamics*, 848 F. Supp. 1335, 1339 (W.D. Mich. 1993). Normally, whether a person is a "controlling person" is a question of fact. *Sanders Confectionary Products*, 973 F. 2d at 485.

Here, defendant Redman has presented evidence by way of her affidavit and defendant Friedman's affidavit that her authority was limited to the filing of the standard corporate documents and resident agent services. Defendant Redman's designation as a member/manager on the documents provided by plaintiff is insufficient at this stage of the proceedings to defeat defendant Redman's motions for summary judgment. Plaintiff has failed to meet his burden under Rule 56(c) by his failure to produce evidence establishing a genuine issue as to defendant Redman's involvement in the operations of Elite. There is an absence of any evidence that defendant Redman actually participated in, or possessed some influence over Elite's operation. *Bomarko*, 848 F. Supp. at 1339.

In *Bomarko*, plaintiffs alleged "controlling person" liability under §78t(a) against certain directors of a corporation, arguing they suffered losses attributable to misrepresentations concerning the corporation's financial health. *Id.* at 1337-38. The district court rejected the plaintiffs' theory that two of the corporation's outside directors,

also comprising the audit committee, could be held liable as "controlling persons" based on their titles alone.  *Id.* at 1339.  The evidence established that the defendants became members in the audit committee by default as the only eligible directors due to their outside director status.  *Id.* at 1340.  Further, the defendants regular attendance at board meetings was insufficient to establish they culpably participated in the issuance of false statements, even though one of the directors was brought on to the board due to his marketing expertise.  *Id.* He attested to the fact that he relied on others to verify the accuracy of SEC filings and press releases.  On these facts, the court concluded there was insufficient evidence to find they actually participated in, or influenced the corporation's operations. *Id.* at 1341-42; *see also, Yadlosky v. Thornton*, 120 F. Supp. 2d 622, 631-32 (E.D. Mich. 2000) (defendant auditors for corporation could not be held liable under § 78t(a) because there was no evidence beyond certifying corporation's financial statements that the defendants participated in corporation's operations).

In *H&H Acquisition Corp. v. Financial Intranet Holdings*, 669 F. Supp. 2d 351 (S.D. N.Y. 2009), the court rejected the plaintiff's theory of control person liability based on the defendant's role as an escrow agent between the plaintiff and corporation as it related to the corporation's purchase of stock from the plaintiff.  *Id.* at 362.  The defendant introduced his sworn statement asserting that he was never an officer, director, or shareholder of the defendant corporation and had "no authority or power to direct and/or control this entity." *Id.*  The plaintiff submitted no evidence contradicting this assertion, therefore the plaintiff failed to meet his burden under Rule 56 to survive summary judgment on the issue of "control person" liability.  *Id.*

Similarly, plaintiff has failed to refute defendant Redman's contention that she had

no control or knowledge of the business operations of Elite Consulting and that her authority was specifically limited to the preparation, execution, and filing of documents required for formation of the company and other certificates and reports as requested by Elite. Plaintiff's reliance on the marketing materials on NRAI.'s website as evidence of defendant Redman's management of Elite's day-to-day operations is misplaced. Specifically, plaintiff relies on the website's representation that NRAI.'s services include "assisting companies and their accounting, tax, and legal advisors to structure and manage businesses of all types." This demonstrates defendant Redman's ability to provide management services to interested businesses, it does not establish her participation in the operations of Elite.

Further, plaintiff's presents a weak argument that he needs additional time to conduct discovery to take depositions because he has been unable to obtain discovery as to defendant Friedman due to the stay entered in December of 2009. At the hearing, plaintiff's counsel reiterated that he has been unable to secure any discovery in relation to defendant Redman's involvement in the operations of Elite, however this is inaccurate. Defendant Redman responded to a subpoena in the companion case of *S.E.C. v. McKnight*, no. 08-11887, and was asked to provide all documentation she had concerning the issues relevant to this matter. Additionally, at the December 6, 2010 hearing, defendant Redman's counsel offered the deposition transcript of Gregory McKnight, where plaintiff's attorneys were in attendance. Nowhere in the two hundred and twenty plus page transcript does Mr. McKnight mention defendant Redman in regard to the sale of Edgetech securities. Further, because plaintiff filed an adversary proceeding in the bankruptcy proceeding, plaintiff could have deposed her in relation to that proceeding. While plaintiff

is correct that no scheduling order is in effect, however it is also true that if plaintiff held any serious belief that there was evidence to show defendant Redman was something more than a third-party corporate service provider than once bankruptcy proceedings concluded, plaintiff could have taken defendant Friedman's deposition. At the very least, plaintiff should have deposed defendant Redman, who was never subject to the stay. It is inaccurate to suggest that plaintiff has been prevented from obtaining discovery in relation to the subject transaction. Plaintiff's motion for order to allow additional discovery is denied.

As plaintiff has failed to provide any additional evidence other than what he provided in opposition to defendant Redman's Rule 12(b)(6) motion to dismiss and this evidence is insufficient to support a claim under section 20(a) of the Securities and Exchange Act as it fails to provide any evidence that she participated in, or had some influence over Elite's operations. Therefore, count II is dismissed against defendant Redman.

### B. State Law Securities Claim

Defendant Redman also argues that plaintiff may not bring securities claims violations pursuant to Michigan, Florida and Nevada laws because Michigan choice of law rules favor allowing Michigan residents to bring suit in Michigan courts under Michigan law. Defendant Redman relies on *Gass v. Marriott*, 558 F. 3d 419, 425 (6th Cir. 2009) in support of her argument. However, *Gass* dealt with Michigan residents who brought a negligence action against Marriott after staying at its hotel in Maui, Hawaii. *Id.* at 422. The court therefore was presented with the question of whether Hawaiian or Michigan law should apply to the plaintiffs' negligence claim. *Id.* Here, plaintiff has brought three separate claims, count III alleges violations of Nevada Uniform Securities Act, count IV alleges

violations of Michigan's Uniform Securities Act and count VII alleges violation of Florida

Securities and Investor Protections Act. *Gass* is distinguishable from the present action.

However, plaintiff does not provide the court with any case law to refute defendant

Redman's contention that only one state's securities law should apply in this action.

Rather, plaintiff argues that defendant Redman is liable under Michigan, Florida and

Nevada state securities laws because securities were offered and sold in violation of each

state's respective laws. The court need not resolve defendant Redman's choice of law

argument because plaintiff cannot establish that defendant Redman is liable under either

Michigan, Florida or Nevada securities laws.

Plaintiff has brought claims under Michigan's Uniform Securities Act, MICH. COMP.

LAWS § 451.501 *et seq.* (MUSA), which was in effect at the time of the events giving rise

to this case.[3] Plaintiff's brings claims under MICH. COMP. LAWS § 451.810(a) and (b). MICH.

COMP. LAWS § 451.810(a) states in relevant part:

> Any person who does either of the following is liable to the person buying the security[]
>
> (1) Offers or sells a security in violation of section 201(a), 301, or 405(b), or of any rule or order under section 403 which requires the affirmative approval of sales literature before it is used[]
>
> (2) offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made . . . not misleading . . . .

---

[3] The Michigan Uniform Securities Act, MICH. COMP. LAWS § 451.501 *et seq.*, was repealed effective October 1, 2009. MICH. COMP. LAWS § 451.2702. However, MICH. COMP. LAWS § 451.2703(1) states that "[t]he predecessor act exclusively governs all actions, prosecutions, or proceedings that are pending or may be maintained or instituted on the basis of facts and circumstances occurring before the effective date of this act . . . ." MICH. COMP. LAWS § 451.2703(1)

MICH. COMP. LAWS § 451.810(a).  This section tracks the language of 5 U.S.C. § 77ℓ which does not apply under an aider and abettor theory.  *Mercer v. Jaffe, Snider*, *Raitt & Heuer, P.C.*, 713 F. Supp. 1019, 1028 (W.D. Mich. 1989).   The *Mercer* court held that, in order to be liable under MICH. COMP. LAWS § 451.810(a), the buyer must believe that he or she purchased the securities from the defendant. *Id.* Because the defendant-lawyers in *Mercer* only "prepared promotional material or offering statements" they could not be held liable because "[t]he buyer does not in any meaningful sense 'purchase the security from such a person." *Id.* at 1024.   Here, there is absolutely no evidence that defendant Redman was involved the in the sale of Edgetech stock.   Therefore, defendant Redman cannot be liable under § 451.810(a).

Michigan Compiled Laws  § 451.810(b) holds a "control person" liable for securities violations, and states:

> Every person who directly or indirectly controls a seller liable under subsection (a), every partner, officer, or director of the seller, every person occupying a similar status or performing similar functions, every employee of the seller who materially aids in the sale, and every broker-dealer or agent who materially aids in the sale are also liable jointly and severally with and to the same extent as the seller.

MICH. COMP. LAWS § 451.810(b). Plaintiff has not presented any evidence that meets any of the criteria under subsection (b).  For the reasons stated in this court's discussion of "control person" liability under § 20(a), defendant Redman did not participate in or otherwise influence the day-to-day operations of Elite and cannot be held liable under a theory of "controlling person" liability.   Further, defendant Redman was not a "partner, officer, or director of the seller" nor did she "occupy[] a similar status or perform[] similar functions[,]" rather she was a third-party corporate services provider who solely filed

corporate formation and dissolution documents on behalf of Elite.  Defendant Redman was

not an employee nor a broker-dealer of the seller who materially aided in the in the sale of

Edgetech stock to McKnight.  Plaintiff's claims under the MUSA are therefore dismissed.

Plaintiff likewise cannot meet his burden of demonstrating that a question of fact

remains as to his claim alleging violation of the Florida Securities and Investor Protection

Act, FLA. STAT. § 517.07 *et seq.* (FSIPA).  Designation of a defendant resident agent and

manager on official corporate forms is insufficient as a matter of law to support a claim

under the FSIPA.  *See Dillon v. AXXSYS International*, 385 F. Supp. 2d 1307, 1310-11

(M.D. Fla. 2005); aff'd 185 Fed. Appx. 823 (11th Cir. 2006).  Under *Dillon*, a defendant can

be held liable if the plaintiff demonstrates  that the defendant  (1) is an officer, director or

agent of the corporation, and (2) "personally participated" in selling the securities to the

purchasers.  *Id.*  "The Florida Securities and Investors Protection Act, [] does not provide

for secondary, 'controlling person' liability."  *Id.* at 1311.  Therefore, plaintiff's claim under

Florida securities law is also dismissed.

Similarly, Plaintiff does not have a viable claim under Nevada's Revised Statute §

90.660(4), which tracks the language of Michigan's securities law.  Specifically, NEV. REV.

STAT. § 90.660(4) states:

> A person who directly or indirectly controls another person who is liable under
> subsection 1 or 3, a partner, officer or director of the person is liable, a
> person occupying a similar status or performing similar functions, any agent
> of the person is liable, an employee of the person liable if the employee
> materially aids in the act, omission or transaction constituting the violation
> and a broker-dealer or sales representative who materially aids in the act,
> omission or transaction constituting the violation, are also liable jointly and
> severally[]

NEV. REV. STAT. § 90.660(4).  As set forth in the court's discussion under Michigan

securities laws, defendant Redman was not a "controlling person" of Elite, she was not a partner, officer or director, and did not hold a similar position, nor was she an employee or broker-dealer who materially aided in the act, omission, or transaction consisting of the violation.  Plaintiff's claim under Nevada law is dismissed.

## V.  CONCLUSION

Accordingly,

Defendant Redman's motion for summary judgment is GRANTED.

Plaintiff's motion for order allowing additional discovery is DENIED.

SO ORDERED.


Dated:  December 22, 2010

/s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE


CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
December 22, 2010, by electronic and/or ordinary mail.
S/Marcia Beauchemin
Deputy Clerk