UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN - SOUTHERN DIVISION

ROBERT GORDON, Receiver of the
Estate of GREGORY N. McKNIGHT,
LEGISI MARKETING, INC., AND
LEGISI HOLDINGS, L.L.C.,

              Plaintiffs,

vs.

ELITE CONSULTING GROUP, LLC, a
Florida limited liability company, IVAN
MONSALVE a/k/a IVAN MONSALVES,
MARSHA FRIEDMAN, KAREN L. REDMAN,
TRICIA WITHERSPOON, JANE DOE, JOHN
DOE, and EDGETECH INTERNATIONAL, INC.,
a Nevada corporation,

              Defendants.

Case No. 09-CV-10772
Hon.  George Caram Steeh

| | |
|---|---|
| Charles E. Murphy (P28909) | Nancy L. Kahn (P29907) |
| Edward J. Hood (P42953) | Foster Swift Collins & Smith PC |
| Eric Shih (P71326) | Attorneys for Defendant Karen L. Redman |
| Clark Hill, PLC | 32300 Northwestern Highway, Suite 230 |
| Attorneys for Plaintiff Robert Gordon | Farmington Hills, MI 48334 |
| 151 S. Old Woodward Avenue, Suite 200 | 248-539-9900 / 248-538-3612 (Fax) |
| Birmingham, MI 48009 | |
| 248-989-5879 / 248-988-2331 | |

**DEFENDANT KAREN REDMAN'S RESPONSE
AND BRIEF IN OPPOSITION TO PLAINTIFFS'
MOTION TO SHORTEN TIME TO RESPOND TO
<u>DOCUMENT REQUESTS AND INTERROGATORIES</u>**


<u>**CERTIFICATE OF SERVICE**</u>

—FOSTER SWIFT COLLINS & SMITH PC || ATTORNEYS—

**DEFENDANT KAREN REDMAN'S RESPONSE
AND BRIEF IN OPPOSITION TO PLAINTIFFS'
MOTION TO SHORTEN TIME TO RESPOND TO
<u>DOCUMENT REQUESTS AND INTERROGATORIES</u>**

NOW COMES Defendant Karen L. Redman, by and through her attorneys Foster Swift Collins & Smith PC, and in response to Plaintiffs' Motion to Shorten Time for Defendant to Respond to Document Requests and Interrogatories states as follows:

1.      <u>**Plaintiffs' Post Judgment Discovery Requests.**</u>  In response to Defendant Redman's Motion for Attorneys' Fees in accordance with the mandatory attorney fee analysis under the Private Securities Litigation Reform Act ("PSLRA"), Plaintiffs submitted interrogatories and requests for document production to Karen Redman for the following:

▪        All insurance policies under which Karen Redman asserted a claim for coverage in connection with the subject litigation.

▪        All correspondence between the above-referenced insurance carriers and Karen Redman's agents or attorneys.

▪        All documents, communications and correspondence regarding insurance coverage issues from or to Defendant Karen Redman or her attorneys.

▪        All research memoranda regarding insurance coverage issues.

▪        All notes or summaries of telephone conferences regarding insurance coverage.

▪        Various other information regarding the insurance carrier from which coverage was sought.

2.      <u>**Plaintiffs' Request for Shortened Response Time.**</u>  Plaintiffs requested that Defendant Karen Redman agree to a shortened time period for answering the above-referenced discovery requests so that answers would be received prior to the hearing on March 16, 2011.

3.      <u>**Defendant Karen Redman's Objections.**</u> The following objections were asserted on behalf of Karen Redman in a telephone conference with Plaintiffs' counsel:

▪        The discovery requests could not lead to relevant information because, if

53702-00001 1080176-1

FOSTER SWIFT COLLINS & SMITH PC || ATTORNEYS

insurance coverage were to be obtained at any point in the future, the insurance carrier would necessarily "stand in the shoes" of Defendant Karen Redman in connection with an attorney fee award under the Private Securities Litigation Reform Act ("PSLRA").

▪ Defendant Karen Redman should not be required to incur additional attorneys' fees in responding to discovery requests which are not timely or relevant.

▪ The discovery requests include requests for documentation and information that is subject to attorney-client privilege and work product privilege.

**4.** **Karen Redman's Agreement to Provide Insurance Declination Letter.**

Notwithstanding the foregoing objections, Karen Redman's counsel offered to provide Plaintiffs' counsel with the most recent declination of coverage from the subject insurance carrier (copy attached as Exhibit A) in exchange for withdrawal of the disputed discovery requests.  Plaintiffs' counsel declined.

**5.** **The Basis for Denial of Insurance Coverage was the Securities Exclusion.**  As indicated in the attached declination letter dated February 23, 2011 sent on behalf of National Union Fire Insurance Company of Pittsburgh, PA ("National Union"), coverage was denied based upon an exclusion for claims "arising out of any purchase or sale of securities."  There was no other basis of declination.

**6.** **The Declination Letters Confirmed That Karen Redman's Authority was Limited to the Filing of Corporate Documents.**  There is nothing in the insurance carrier's declination letter that would provide justification for Plaintiffs' decision to name Karen Redman as a Defendant in this action.  On the contrary, the insurance carrier concluded the obvious with respect to the limitations of Ms. Redman's authority as follows:

> Although the Articles of Organization identified Ms. Redman as the manager of Elite, pursuant to the terms of Elite's unsigned Limited Liability Company Operating Agreement dated September 1, 2006, (the "Operating Agreement") Ms. Friedman was the only member identified.  Further, the Operating Agreement specified that the management of Elite was vested in the member (i.e. Marsha Friedman).

FOSTER SWIFT COLLINS & SMITH PC || ATTORNEYS

6(B) of the Operating Agreement provided that Ms. Redman was designated as the authorized person to execute, deliver and file the Certificate of Formation of the Company and other certificates necessary for the Company to qualify to do business in any jurisdiction desired by the Company. (February 23, 2011 declination letter, pg. 2).

**7.** **Both Declination Letters Were Based Upon the Nature of Plaintiffs' Securities Fraud Claim.** The declination letter of February 23, 2011 was substantially the same as the first declination letter sent on behalf of insurer dated September 29, 2009 (copy attached as Exhibit B). In both declination letters, the insurance carrier declined coverage based upon the nature of Plaintiffs' securities fraud claims, despite the fact that Ms. Redman's actions as a third party service provider in the filing of corporate formation and dissolution documents were covered professional services within the meaning of the Policy:

> "The fact that in its Complaint the Plaintiff also alleged that Ms. Redman filed corporate documents forming and dissolving various corporate entities (activities which, in and of themselves, constitute covered professional services within the meaning of the Policy") does not change the fact that all of these claims arose out of the Plaintiffs' purchase of securities and/or Ms. Redman's alleged violation of securities laws." (Exhibit A, pg. 5).

No insurance was purchased relating to the sale of securities because neither Ms. Redman nor her employer had any knowledge of or involvement in the sale of securities.

**8.** **Plaintiffs' Requested Post Judgment Expedited Discovery Could not Provide a Factual or Legal Justification for the Filing of Their Claim Against Karen Redman.** Plaintiffs' fanciful assertion that the insurance carrier could provide them with justification for having named Karen Redman in this suit as a Defendant in this suit is completely without merit. This motion further evidences Plaintiffs' extreme efforts to obscure the absence of sufficient factual and legal basis for including Karen Redman as a named Defendant in this action.

-4-

WHEREFORE, Defendant Karen Redman respectfully requests that this Court deny Plaintiffs' Motion and further order that an award of attorneys' fees in favor or Karen Redman include the cost of response to this Motion.

Respectfully submitted,

**FOSTER SWIFT COLLINS & SMITH PC**

By:    s/Nancy L. Kahn
        Nancy L. Kahn (P29907)
        Attorneys for Defendant Karen L. Redman
        32300 Northwestern Highway, Suite 230
        Farmington Hills, MI 48334 / 248-539-9900

Dated:  March 15, 2011

FOSTER SWIFT COLLINS & SMITH PC || ATTORNEYS

53702-00001 1080176-1

# EXHIBIT A



**Maddin Hauser Wartell Roth & Heller PC**
**attorneys and counselors**

HARVEY R. HELLER
Direct Dial No. (248) 827-1899
Direct Fax No. (248) 359-6149
E-Mail: hrh@maddinhauser.com

28400 Northwestern Highway   Third Floor   Southfield, MI 48034-1839   (248) 354-4030   fax (248) 354-1422   www.maddinhauser.com

February 23, 2011

**VIA EMAIL: nkahn@fosterswift.com**

Nancy L. Kahn
Foster, Swift, Collins & Smith, P.C.
Suite 230
32300 Northwestern Hwy.
Farmington Hills, MI 48334

Re:   Insured:   Karen Redman, National Registered Agents, Inc.
      Claimant:  Robert Gordon
      Claim No.  295-048900

Dear Ms Kahn:

As a follow up to the referenced matter, in accordance with your request, we have re-evaluated National Union's coverage obligations in connection with the referenced matter in light of the Court's December 22, 2010 Order Granting Karen Redman's Motion for Summary Judgment. For the reasons set forth below and in our September 29, 2009 denial letter, despite the Court's recent ruling, National Union is not obligated to reimburse Ms. Redman for her defense costs.

## FACTUAL BACKGROUND

**NRAI and GEC**

National Registered Agents, Inc. ("NRAI") is a professional service company that offers registered agent and other corporate services nationwide. Global Entity Consulting Group, LLC (hereinafter "GEC") is a corporate service office of NRAI (i.e. a Florida affiliate of NRAI). Karen L. Redman ("Ms. Redman"), is the founder and Chief Executive Officer of GEC. Like NRAI, GEC offers corporate services including providing resident agents for receipt of service of process and services in connection with the filing of documents for the formation and dissolution of corporations.

**The Formation of Elite**

On or about August 31, 2006, Marsha Freidman, (or someone on her behalf), retained GEC to file documents forming a limited liability company by the name of Elite Consulting Group, LLC ("Elite") in the State of Florida. GEC was also retained to provide a registered agent for Elite. Based upon the services that Elite purchased from GEC, GEC prepared Articles of Organization identifying NRAI as the resident agent of Elite and Ms. Redman as the "manager" of Elite. Elite's Articles of Organization were filed with the State of Florida on

February 23, 2011
Page 2.

_____

September 1, 2006.  Although the Articles of Organization identified Ms. Redman as the manager of Elite, pursuant to the terms of Elite's unsigned Limited Liability Company Operating Agreement dated September 1, 2006 (the "Operating Agreement"), Ms. Freidman was the only member identified.  Further, the Operating Agreement specified that the management of Elite was vested in the member (i.e. Marcia Freidman).  Paragraph 6 B of the Operating Agreement provided that Ms. Redman was designated as the authorized person to execute, deliver, and file the certificate of formation of the company and other certificates necessary for the company to qualify due to business in any jurisdiction desired by the company.

**Elite's Sale of Edgetech's Securities to McKnight**

On February 16, 2007, Trisha Witherspoon (a person allegedly affiliated with Elite) made a "cold call" to Gregory McKnight – a Michigan resident who was engaged in the securities business – to promote the sale of the stock of Edgetech.  Apparently, Ms. Witherspoon did not disclose the fact that neither she nor Elite were licensed to sell securities and falsely represented that she was a registered representative.  Ms. Witherspoon provided Mr. McKnight with a false press release regarding Edgetech.  Based upon these representations, Mr. McKnight entered into an agreement to purchase shares of Edgetech.

**Elite is dissolved**

Just weeks after the Edgetech securities had been sold to Mr. McKnight, on May 30, 2007, Ms. Redman filed voluntary Articles of Dissolution on behalf of Elite.  Upon dissolution, the assets of Elite were distributed to its members.

**The SEC files suit against McKnight**

On May 5, 2008, the SEC filed a complaint in the U.S. District Court for the Eastern District of Michigan against Mr. McKnight and Legisi Holdings, LLC, a shell company which Mr. McKnight operated as president, alleging violations of various federal securities laws.  At the same time, the SEC filed an Ex Parte Motion for the Appointment of a Receiver.  The court appointed attorney Robert D. Gordon as receiver for the Estate of Mr. McKnight and entered an order freezing Mr. McKnight's assets.  In its complaint, the SEC claimed that Mr. McKnight and Legisi Holdings conducted a fraudulent, unregistered offering of securities and raised $72M.  Apparently, the monies were used as part of a Ponzi scheme and to pay Mr. McKnight's personal expenses.

**The receiver for Mr. McKnight files suit against Ms. Redman and others**

On March 2, 2009, Mr. Gordon, in his capacity as receiver of Mr. McKnight' estate, filed suit against Elite, Ms. Redman, and other alleged members of Elite in federal court claiming that the defendants made fraudulent representations in connection with the sale of the Edgetech securities.  In the complaint, the plaintiff asserted the following claims:  violation of federal securities laws (Counts I and II); violation of various state securities laws (Counts III, IV, and VII); common law fraud (Count V); and innocent misrepresentation (Count VI) (hereinafter the "Underlying Action").  Ms. Redman reported this claim to NRAI's professional liability insurer, National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union").

February 23, 2011
Page 3.

---

**Ms. Redman retains defense counsel**

Ms. Redman then retained you to represent her in the defense of the Underlying Action. On May 22, 2009, you filed an Answer and Affirmative Defenses on behalf of Ms. Redman as well as a Motion to Dismiss pursuant to Rule 12(b)(6).

**The November 19, 2009 Ruling on Ms. Redman's Motion to Dismiss**

On November 19, 2009, the Court entered an Order granting Ms. Redman's motion, in part. In its November 19, 2009 Order, the Court dismissed Count I (Fraud §10(b)(5) and Rule 10b-5); Count V (Fraud); and Count VI (Innocent Misrepresentation). The Court found that there were no allegations of reliance and causation necessary to support the 10b-5 claim and dismissal of the fraud and misrepresentation claims was appropriate because there was no allegation that Ms. Redman actually made any misrepresentations. However, the Court refused to dismiss the remainder of the claims which were based upon the alleged violation of state and federal securities laws (Count II – violation of §20 of the Exchange Act); Count III (violation of Nevada Securities Law); Count IV (violation of Michigan Securities Laws); and Count VII (violation of Florida Securities laws).

**Redman's Motion for Summary Judgment**

On October 8, 2010, Ms. Redman filed a Motion for Summary Judgment requesting that the Court dismiss the remaining securities claims because Ms. Redman was not in any way involved in the sale of securities or Elite's business. Rather, her only involvement was to file the corporate formation and dissolution documents. On December 22, 2010, the Court entered an Order Granting Ms. Redman's Motion for Summary Judgment finding, in relevant part, that Ms. Redman's designation as a member/manager on the corporate formation documents did not establish that she was a "controlling person" and there was no evidence that she was involved in the actual sale of the securities.

In light of the Court's ruling, you have requested that we reevaluate National Union's coverage obligations and agree to reimburse Ms. Redman for the $108,310.49 in defense costs she allegedly incurred in defending this claim. For the reasons detailed below, the Court's December 22, 2010 ruling does not impact our previous determination that National Union is not obligated to defend or indemnify Ms. Redman in connection with this claim. Therefore, National Union will not be reimbursing Ms. Redman for these defense costs.

## THE POLICY

National Registered Agents, Inc. ("NRAI") is the named insured under a claims-made and reported Miscellaneous Professional Liability Policy that was issued by National Union Fire Insurance Company of Pittsburgh, Pa. bearing policy number 94-555-70-87 effective from November 3, 2008 to November 3, 2009 (the "Policy"). The Policy has limits of $5M subject to a $25,000 retention.

February 23, 2011
Page 4.

_____

## COVERAGE ANALYSIS

Exclusion D (the "Securities Exclusion") provides, in relevant part, that coverage is not available with respect to claims:

> "arising out of:
>
> 1. any purchase, sale, or offer or solicitation of an offer to purchase or sell securities;
> 2. any violation of any securities law, including the Securities Act of 1933, as amended, or the Securities Exchange Act of 1934, as amended, or any regulation promulgated under the foregoing statutes, or any federal, state or local laws similar to the foregoing statutes (including "Blue Sky" laws), whether such law is statutory or common law; or"

In accordance with the foregoing exclusion, coverage is not available with respect to any claim "arising out of" *either*:  (1) the purchase/sale/offering/solicitation of securities; *or* (2) the violation of any federal or state securities law.

**Counts I, II, III, IV and VII arose out of the violation of federal or state securities laws**

Counts I, II, III, IV and VII of the complaint in the Underlying Action all "arose out of" the alleged violation of federal and/or state securities laws.  The violation of the securities laws referenced in the Complaint was the very basis for each one of these claims.  In Count I, the Plaintiff asserted a claim for relief due to the Defendants alleged violation of § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder (Complaint ¶¶36-43).  Thus, Count I unquestionably arose out of a violation of the Securities Exchange Act within the meaning of the Securities Exclusion.  In Count II, the Plaintiff asserted a claim for relief against Ms. Redman as an alleged "control person" under § 20(a) of the Exchange Act.  (Complaint, ¶¶ 45-46).  Thus, Count II also arose out of a violation of the Securities Exchange Act within the meaning of the Securities Exclusion.

In Counts III, IV and VII, Plaintiff asserted claims for relief due to an alleged violation of the Nevada Uniform Securities Act (Complaint, ¶¶ 48-58); the Michigan Uniform Securities Act, (Complaint, ¶¶ 60-65); and the Florida Securities Transaction Act (Complaint, ¶¶ 76-82).  Thus, Counts III, IV and VII arose out of a violation of state securities laws within the meaning of the Securities Exclusion.

Since Counts I, II, III, IV and VII all arose out of the alleged violation of federal and/or state securities laws, coverage as to these counts is barred by the Securities Exclusion.  The fact that the Court ultimately determined there was not sufficient evidence to maintain these securities claims does not alter the fact that these claims all arose out of the alleged violation of securities laws.

February 23, 2011
Page 5.

_____

### Counts V and VI arose out of the purchase/sale of securities

Although Count V (Fraud) and Count VI (Innocent Misrepresentation) were not labeled securities law claims, both of these claims "arose out of" the purchase/sale of securities and, therefore, are not covered. In Count V (the fraud claim), Plaintiff alleged that the Defendants "fraudulently sold Edgetech securities to McKnight by making material misrepresentations and omissions." (Complaint, ¶ 67). Thus, Count V "arose out of" (i.e. originated from or had a substantial nexus with) the Plaintiff's purchase of Edgetech Securities. In fact, the only misrepresentations about which the Plaintiff complained were misrepresentations that were allegedly made to induce Mr. McKnight to purchase these securities. The fraud claim arose out of the sale of securities.

The innocent misrepresentation claim set forth in Count VI also arose out of Plaintiff's purchase of securities. In ¶ 72 of the Complaint (the introductory paragraph to this Count), Plaintiff alleged that: "Defendants fraudulently sold Edgetech securities to McKnight by making material misrepresentations and omissions..." (Complaint, ¶ 72). Further, in ¶ 73 Plaintiff alleged that "Elite made these misrepresentations and omissions in connection with the making of a contract for the sale of Edgetech's Securities..." (Complaint, ¶ 73). Although the Court may ultimately have determined that these factual allegations were without merit, that does not change the fact that the Plaintiff filed a claim alleging that Ms. Redman made misrepresentations in connection with the sale of securities – a claim excluded by the Securities Exclusion.

Each and every count of the complaint that was filed in the Underlying Action "arose out of" the purchase of securities and/or the Defendants' alleged violation of various securities laws. The fact that in its Complaint the Plaintiff also alleged that Ms. Redman filed corporate documents forming and dissolving various corporate entities (activities which, in and of themselves, constitute covered professional services within the meaning of the Policy), does not change the fact that all of these claims also arose out of the Plaintiffs' purchase of securities and/or Ms. Redman's alleged violation of various securities laws. Since each one of these claims arose, at least in part, out of conduct excluded by the Securities Exclusion, coverage is barred, in its entirety, by that exclusion. Therefore, National Union is not obligated to defend or indemnify Ms. Redman in connection with this claim regardless of the Court's recent ruling.

In your January 6, 2011 correspondence, you make a number of arguments why you believe National Union had a duty to defend Ms. Redman in connection with this claim. We have reviewed each one of these arguments, however, for the reasons detailed below, we still do not believe National Union had a duty to defend this claim.

**A.     The fact that the Complaint alleged that Ms. Redman engaged in conduct that, in and of itself, would be covered does not avoid the Securities Exclusion**

At pages 4-5 of your January 6, 2011 letter, you claim that National Union has a duty to defend this claim because Section IB1 of the Policy provides that National Union will defend a suit alleging a "wrongful act". You claim that since the Complaint alleges that Ms. Redman filed corporate formation and dissolution documents (which are covered "wrongful acts" under the

February 23, 2011
Page 6.

_____

Policy), National Union has a duty to defend this claim.  In making this argument, you have overlooked an important rule of insurance contract interpretation:

> "Exclusions limit the scope of coverage provided and are to be read with the insuring agreement and independently of every other exclusion."  *Hawkeye-Security Ins. Co. v Vector Construction Co.,* 185 Mich. App. 369, 384 (1990).  See also, *Weedo v Stone-E-Buck, Inc.,* 81 N.J. 233, 248 (1979).

The duty to defend provision to which you refer is set forth in Part B of the Policy's Insuring Agreement.  Since the duty to defend provision is part of the Policy's Insuring Agreement, the duty to defend provision is to be read *with* the Securities Exclusion.  Pursuant to the Securities Exclusion, the Policy does *not* cover claims such as this that "arise out of" the sale of securities or the violation of securities laws.

**B.    Coverage was not possible, and, therefore, there is no duty to defend**

You claim that "Plaintiffs' theory of liability was based upon the defined professional services of (Ms. Redman), thus creating the potential for coverage."  Therefore, you contend that National Union was required to defend this claim.  Contrary to your contention, although the duty to defend is broader than the duty to indemnify, it is not without boundaries.  As you acknowledge, a duty to defend exists only if there is some theory of relief that falls within the scope of the Policy.  *Schuler v Michigan Physicians Mutual Liability Co.,* 260 Mich. App. 492 (2004).  In this case, there is no theory of relief that falls within the scope of the Policy.  The theory of relief in this case was that various misrepresentations were made in connection with the sale of securities and securities laws were violated as a result of which the Plaintiff was damaged.  Although the Plaintiffs may allege that Ms. Redman is responsible for these misrepresentations and securities law violations in part because she incorporated and dissolved the entity that sold the securities, that does not change the fact that the claim that was pled "arises out of" the sale of securities and the violation of securities laws within the meaning of the Securities Exclusion.

As explained by the Michigan Court of Appeals in *Fitch v State Farm Fire and Casualty Co.,* 211 Mich. App. 468, 471 (1995):

> "Whether an insurance carrier has a duty to defend its insured in an underlying tort action depends upon the allegations in the complaint.  The duty to defend and indemnify is not based solely on the terminology used in the pleadings in the underlying action.  The court must focus also on the cause of the injury to determine whether coverage exists.  Thus, it appears that our inquiry is twofold.  Does the claimed injury fall within the meaning of the terms used in the policy?  If so, is the cause of the injury covered under the policy?"  (Citations omitted.)

The Plaintiff's injuries in this case were caused by the making of misrepresentations in connection with the sale of these securities and the alleged violation of securities laws.  The cause of the Plaintiff's injuries is specifically excluded from coverage by the Securities Exclusion.  If coverage is barred by an exclusion, the insurer does not have a duty to defend its

February 23, 2011
Page 7.

_____

insured. (See, for example two of the cases you cited: *Schuler v Michigan Physicians Mutual Liability Co.,* 260 Mich. App. 492 (2004) and *Protective National Insurance Co. of Omaha v City of Woodhaven,* 438 Mich. 154 (1991).

### C.   The Duty to Defend was extinguished by the Securities Exclusion

At pages 5-9 of your letter, you list a number of reasons why you believe a duty to defend exists despite the Securities Exclusion. We will address these reasons in the same order that they appear in your letter.

### (1)   The Securities Exclusion need not specifically state that it excludes the duty to defend

First of all, none of the cases you cite at page 6 of your letter stand for the proposition that an exclusion must specifically state that it excludes a duty to defend in order to eliminate the duty to defend. To the contrary, the well established rule is that:

> "...there is no duty to defend if the claim is beyond the scope of the insuring agreement or precluded by a policy exclusion. *Central National Ins. Co. v Utica Nat. Ins. Group,* 232 N.J. Super. 467, 569-71, 557 A.2d 693 (App. Div. 1989). Thus, when an excluded claim is made against the insured, the insurer has no duty to defend..." 2009 WL 1905107*14 (D.N.J. June 30, 2009).

The fact that the claim is not covered also means that there is not a duty to defend that claim unless, of course, the exclusion states otherwise. For example, Exclusion A has a "carve out" for the duty to defend. Exclusion A provides that although coverage is not available for fraudulent acts, National Union will defend such claims until a finding of fact is made that the insured actually engaged in the excluded conduct. The Securities Exclusion does not contain such a "carve out" for the duty to defend. If a claim falls within the scope of the Securities Exclusion, there is no duty to defend that claim.

### (2)   "Arising out of" is not narrowly construed in the context of a policy exclusion

You contend that the phrase "arising out of" is to be narrowly interpreted in the context of a policy exclusion such as this. In support of this contention, you have cited an Illinois case, however, Illinois law does not apply. Rather, the Policy is to be interpreted in accordance with New Jersey law (where the Policy was issued), Florida law (where the insured is located), or Michigan law (where the lawsuit was pending and the securities were sold). In each one of these jurisdictions, the phrase "arising out of" is broadly interpreted, even in context of a policy exclusion, to mean "originating from", "growing out of", "having a substantial nexus", "growing out of", or "flowing from" the excluded cause. *Prudential Property & Cas. Ins. Co. v Brenner,* 350 N.J. Super. 316 (2002). *Alligator Enterprises, Inc. v General Agent's Ins. Co.,* 773 So. 2d 94, 95 (2000) rev. denied 790 So. 2d 1101 (2001) and *McKusick v Travelers Indemnity Co.,* 246 Mich. App. 329, 340-341 (2001). As noted by one of the preeminent authorities on insurance law, in accordance with this broad interpretation:

February 23, 2011
Page 8.

_____

> "...there only need be 'a' causal connection, rather than a
> proximate causal connection." *Couch on Insurance,* 3d § 101:54
> at 101-147-48 (1997).

### (3) and (4)    The fact that the Plaintiff alleges Ms. Redman performed professional services as part of its claim does not avoid the securities exclusion

At pages 7-8 of your January 6, 2011 letter, you insist that the fact that the Complaint alleges that Ms. Redman engaged in activities that constitute covered professional services somehow avoids the Securities Exclusion. It does not. The fact that the Plaintiff claimed that Ms. Redman violated the securities laws in the course of performing "professional services" (i.e. forming and dissolving corporate entities) does not change the fact that each and every one of these claims also "arose out of" (i.e. has a causal connection with) the alleged violation of securities laws and/or the alleged fraudulent sale of securities. Since each one of these claims arose, at least in part, out of the alleged fraudulent sale of securities and/or violation of securities laws, coverage is barred, in its entirety, by the Securities Exclusion. Thus, there is no duty to defend.

### (4)    The Securities Exclusion is not ambiguous

You claim that the Securities Exclusion is ambiguous because: (1) it does not specifically exclude the duty to defend; and (2) it does not specify whether the exclusion applies if the insured was not actually involved in the sale of the securities. With respect to item number 1, we addressed that argument in paragraph C(1). With respect to number 2, although other exclusions such as Exclusion A may require a finding of intentional conduct (e.g. actual involvement), the Securities Exclusion does not. As noted earlier, every exclusion is to be read independently of every other exclusion. Pursuant to the Securities Exclusion, the exclusion applies to any claim that arises out of the sale of securities. Since each one of these claims arose out of the sale of securities and/or the alleged violation of securities laws, there is no duty to defend.

### D.    National Union did not have a duty to defend the fraud claim

Admittedly, Exclusion A requires that National Union provide a defense until there is a finding against the insured. However, as previously indicated, National Union is not denying coverage based on Exclusion A. Rather, National Union is denying coverage based on the Securities Exclusion. The Securities Exclusion does not require that National Union provide a defense until there is a finding of intentional/knowing misconduct. Rather, the Securities Exclusion applies if the claim "arises out of" the purchase/sale of securities and/or the violation of securities laws. Exclusions are not to be read cumulatively. Rather, each exclusion is to be read independently of every other exclusion. *Hawkeye-Security Ins. C. v. Vector Construction Co., 185 Mich. App. 369, 384-385 (1990).* Since every exclusion is to be read independently of every other exclusion, the finding requirement in Exclusion A cannot be read into the Securities Exclusion. Although the sale of these securities was allegedly accomplished by means of various fraudulent representations thereby implicating Exclusion A, that does not change the fact that this claim also arises out of the purchase/sale of securities and/or the alleged violation of securities laws within the meaning of the Securities Exclusion. Although Exclusion A requires a finding of an intentional/knowing act before coverage can be denied, the Securities Exclusion

February 23, 2011
Page 9.

does not.  Since the Securities Exclusion does not impose any finding requirement, contrary to your contention, National Union did not have a duty to defend this claim until there was a finding.

### CONCLUSION

For the reasons detailed above, since this entire claim arose out of the violation of various securities laws and/or the purchase/sale of securities, coverage is barred by the Securities Exclusion and, therefore, National Union did not have a duty to defend this claim on behalf of Ms. Redman.  Therefore, National Union will not be reimbursing Ms. Redman for her defense costs.

Very truly yours,

MADDIN, HAUSER, WARTELL, ROTH & HELLER, P.C.

Harvey R. Heller

HRH/mmr
cc      Ms. Valerie Fletcher
        Mr. Robert Hershkowitz

1047302 - 06527-0250

# EXHIBIT B

**m a d d i n   h a u s e r**

**m h**

**Maddin Hauser Wartell Roth & Heller PC**
**a t t o r n e y s   a n d   c o u n s e l o r s**

HARVEY R. HELLER
Direct Dial No. (248) 827-1899
Direct Fax No. (248) 359-6149
E-Mail: hrh@maddinhauser.com

28400 Northwestern Highway   Third Floor   Southfield, MI 48034-1839   (248) 354-4030   fax (248) 354-1422   www.maddinhauser.com

September 29, 2009

<u>VIA EMAIL: nkahn@fosterswift.com</u>

Nancy L. Kahn
Foster, Swift, Collins & Smith, P.C.
Suite 230
32300 Northwestern Hwy.
Farmington Hills, MI 48334

Re:    Insured:       Karen Redman, National Registered Agents, Inc.
       Claimant:      Robert Gordon
       Claim No.      295-048900

Dear Ms Kahn:

As a follow up to the referenced matter, the undersigned has been retained as coverage counsel on behalf of National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union"). This letter shall serve to advise you of National Union's coverage position relative to the referenced matter and to respond to your August 25, 2009 correspondence.

## FACTUAL BACKGROUND

**NRAI and GEC**

National Registered Agents, Inc. ("NRAI") is a professional service company that offers registered agent and other corporate services nationwide. Global Entity Consulting Group, LLC (hereinafter "GEC") is a corporate service office of NRAI (i.e. a Florida affiliate of NRAI) that specializes in global entity formation and management. Karen L. Redman ("Ms. Redman"), an attorney and "business and trust formation expert both in the U.K. and the U.S.", is the founder and Chief Executive Officer of GEC. Like NRAI, GEC offers corporate services including providing resident agents for receipt of service of process and services in connection with the filing of documents for the formation and dissolution of corporations.

**The Formation of Elite**

On or about August 31, 2006, Marsha Freidman, (or someone on her behalf), retained GEC to file documents forming a limited liability company by the name of Elite Consulting Group, LLC ("Elite") in the State of Florida. GEC was also retained to provide a registered agent for Elite. Based upon the services that Elite purchased from GEC, GEC prepared Articles of Organization identifying NRAI as the resident agent of Elite and Ms. Redman as the "manager" of Elite. Elite's Articles of Organization were filed with the State of Florida on September 1, 2006. Although the Articles of Organization identified Ms. Redman as the manager of Elite, pursuant to the terms of Elite's unsigned Limited Liability Company Operating

September 29, 2009
Page 2.

Agreement dated September 1 2006 (the "Operating Agreement"), Ms. Freidman was the only member identified.  Further, the Operating Agreement specified that the management of Elite was vested in the member (i.e. Marcia Freidman).  Paragraph 6 B of the Operating Agreement provided that Ms. Redman was designated as the authorized person to execute, deliver, and file the certificate of formation of the company and other certificates necessary for the company to qualify due to business in any jurisdiction desired by the company.

**Elite's Sale of Edgetech's Securities to McKnight**

On February 16, 2007, Trisha Witherspoon (a person who is allegedly affiliated with Elite) made a "cold call" to Gregory McKnight – a Michigan resident who was engaged in the securities business – to promote the sale of the stock of Edgetech.  Apparently, Ms. Witherspoon did not disclose the fact that neither she or Elite were licensed to sell securities and falsely represented that she was a registered representative.  Ms. Witherspoon provided Mr. McKnight with false press releases regarding Edgetech.  Thereafter, based upon these representations, Mr. McKnight entered into an agreement to purchase a total of 1,050,000 shares of Edgetech for $262,500.00.  The shares were issued on April 16, 2007.

**Elite is dissolved**

Just weeks after the Edgetech securities had been sold to Mr. McKnight, on May 30, 2007, Ms. Redman filed voluntary Articles of Dissolution on behalf of Elite.  Upon dissolution, the assets of Elite were distributed to its members.

**The SEC files suit against McKnight**

On May 5, 2008, the SEC filed a complaint in the U.S. District Court for the Eastern District of Michigan against Mr. McKnight and Legisi Holdings, LLC, a shell company which Mr. McKnight operated as president, alleging violations of various federal securities laws.  At the same time, the SEC filed an Ex Parte Motion for the Appointment of a Receiver.  The court appointed attorney Robert D. Gordon as receiver for the Estate of Mr. McKnight.  On that same date, an order was entered freezing Mr. McKnight's assets.  In its complaint, the SEC claimed that Mr. McKnight and Legisi Holdings conducted a fraudulent, unregistered offering of securities and that, between December 2005 and November 2007, they raised $72M from 3,000 investors in all 50 states and several foreign countries.  Apparently, the monies were used as part of a Ponzi scheme and to pay Mr. McKnight's personal expenses.

**The receiver for Mr. McKnight files suit against Ms. Redman and others**

On March 2, 2009, Mr. Gordon, in his capacity as receiver of Mr. McKnight' estate, filed suit against Elite, Ms. Redman, and other alleged members of Elite in federal court claiming that the defendants made fraudulent representations in connection with the sale of the Edgetech securities.  In their complaint, plaintiffs assert the following claims:  violation of federal securities laws (Counts I and II); violation of various state securities laws (Counts III, IV, and VII); common law fraud (Count V); and innocent misrepresentation (Count VI) (hereinafter the "Underlying Action").  Ms. Redman reported this claim to National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") – NRAI's professional liability insurer.  Before National Union had an opportunity to complete its evaluation of coverage, on August 25, 2009, you wrote to National Union and advised that since National Union had not yet agreed to provide Ms. Redman with a defense, you were defending her in connection with this claim.  In this letter, you

September 29, 2009
Page 3.

have taken the position that National Union has a duty to provide Ms. Redman with a defense in the Underlying Action until there is a finding that the she committed an act that falls within the scope of one of the Policy's exclusions. For the reasons detailed below, we respectfully disagree with your conclusion in this regard and, therefore, National Union will not be providing Ms. Redman with a defense or indemnification in connection with this claim.

## THE POLICY

National Registered Agents, Inc. ("NRAI") is the named insured under a claims-made and reported Miscellaneous Professional Liability Policy that was issued by National Union Fire Insurance Company of Pittsburgh, Pa. bearing policy number 94-555-70-87 effective from November 3, 2008 to November 3, 2009 (the "Policy"). The Policy has limits of $5M subject to a $25,000 retention.

## COVERAGE ANALYSIS

### 1.    Coverage is barred by the Securities Exclusion

Exclusion D provides, in relevant part, that coverage is not available with respect to claims:

> "arising out of:
>
> 1.    any purchase, sale, or offer or solicitation of an offer to purchase or sell securities;
> 2.    any violation of any securities law, including the Securities Act of 1933, as amended, or the Securities Exchange Act of 1934, as amended, or any regulation promulgated under the foregoing statutes, or any federal, state or local laws similar to the foregoing statutes (including "Blue Sky" laws), whether such law is statutory or common law; or"

In accordance with the foregoing exclusion, coverage is not available with respect to any claim "arising out of" *either*: (1) the purchase/sale/offering/solicitation of securities; *or* (2) the violation of any federal or state securities law.

As noted by one of the preeminent authorities on insurance law:

> "…if an exclusion eliminates coverage for liability 'arising out of'…certain events or causes, there should not be coverage even if the theory of liability alleged is not the one set forth in the exclusion. It is enough that the theory of liability alleged arises out of or exists by reason of the events or causes listed in the exclusion." (2 *Windt, Insurance Claims & Disputes, 4th Ed.* §11:22A).

September 29, 2009
Page 4.

As a general rule, the phrase "arising out of" is interpreted broadly.

> "The phrase arising out of within policy language is generally considered to mean 'flowing from' or 'having its origin in', thereby indicating that there only need be 'a' causal connection, rather than a proximate causal connection." *Couch on Insurance,* 3d § 101:54 at 101-147-48 (1997).

Pursuant to New Jersey law (the law of the jurisdiction where the Policy was issued), the phrase "arising out of" is broadly interpreted in the context of a policy exclusion to mean "originating from", "growing out of", "having a substantial nexus" with the excluded cause. *Prudential Property & Cas. Ins. Co. v Brenner,* 350 N.J. Super. 316 (2002). Pursuant to Florida law (where Ms. Redman is located) and Michigan law (where the underlying action is pending and where the sale of the securities occurred), the phrase "arising out of" is also broadly interpreted to mean "originating from, having its origin in, growing out of, flowing from." *Alligator Enterprises, Inc. v General Agent's Ins. Co.,* 773 So. 2d 94, 95 (2000) rev. denied 790 So. 2d 1101 (2001) and *McKusick v Travelers Indemnity Co.,* 246 Mich. App. 329, 340-341 (2001).

For the reasons detailed below, each one of the claims set forth in the complaint that was filed in the Underlying Action arises out of either the purchase/sale of securities or the alleged violation of federal or state securities laws and, therefore, coverage is not available with respect to this claim.

**Counts I, II, III, IV and VII arise out of the violation of federal or state securities laws**

Counts I, II, III, IV and VII of the complaint in the Underlying Action all "arise out of" the alleged violation of federal and/or state securities laws. In each one of these counts, the violation of the referenced securities law is the very basis for the claim. In Count I, plaintiffs assert a claim for relief due to the defendants alleged violation of § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder (Complaint ¶¶36-43). Thus, Count I unquestionably arises out of a violation of the Securities Exchange Act within the meaning of Exclusion D. In Count II, plaintiffs assert a claim for relief against the individual defendants (including Ms. Redman) as "control persons" under § 20(a) of the Exchange Act. (Complaint, ¶¶ 45-46). Thus, Count II also arises out of a violation of the Securities Exchange Act within the meaning of Exclusion D.

In Count III, plaintiffs assert a claim for relief due to an alleged violation of the Nevada Uniform Securities Act. (Complaint, ¶¶ 48-58). In Count IV, plaintiffs assert a claim for relief due to an alleged violation of the Michigan Uniform Securities Act (Complaint, ¶¶ 60-65). In Count VII, plaintiffs assert a claim for relief due to an alleged violation of the Florida Securities Transaction Act (Complaint, ¶¶ 76-82). Thus, Counts III, IV and VII all arise out of a violation of state securities laws within the meaning of Exclusion D.

Since Counts I, II, III, IV and VII all arise out of the alleged violation of federal and/or state securities laws, coverage as to these counts is barred by Exclusion D.

867120 - 08527-0250

September 29, 2009
Page 5.

### Counts V and VI arise out of the purchase/sale of securities

Although Count V (Fraud) and Count VI (Innocent Misrepresentation) are not labeled securities law claims, both of these claims "arise out of" the purchase/sale of securities and, therefore, are not covered. In Count V (the fraud claim), plaintiffs allege that the defendants "fraudulently sold Edgetech securities to McKnight by making material misrepresentations and omissions." (Complaint, ¶ 67). Thus, Count V "arises out of" (i.e. originates from or has a substantial nexus with) the plaintiff's purchase of Edgetech Securities. In fact, the only misrepresentations about which the plaintiffs complain are misrepresentations that were allegedly made to induce Mr. McKnight to purchase these securities. The fraud claim arises out of the sale of securities.

The innocent misrepresentation claim set forth in Count VI also arises out of plaintiff's purchase of securities. In ¶ 72 of the Complaint (the introductory paragraph to this Count), plaintiffs allege that: "Defendants fraudulently sold Edgetech Securities to McKnight by making material misrepresentations and omissions..." (Complaint, ¶ 72). Further, in ¶ 73 plaintiffs allege that "Elite made these misrepresentations and omissions in connection with the making of a contract for the sale of Edgetech's Securities..." (Complaint, ¶ 73). Since Count VI is premised upon misrepresentations that were allegedly made in connection with the sale of securities, coverage is also barred as to Count VI.

Since each and every count of the complaint that was filed in the Underlying Action "arises out of" the purchase of securities and/or the defendants' alleged violation of various securities laws, coverage is barred, in its entirety, by Exclusion D. Therefore, National Union is not obligated to defend or indemnify Ms. Redman in connection with this claim.

### 2.   National Union does not have a duty to defend Ms. Redman in connection with this claim

In your August 25, 2009 correspondence, you cite a number of reasons why you believe that National Union has a duty to defend Ms. Redman in connection with this claim. For the reasons detailed below, we respectfully disagree.

### Exclusion D is not contingent upon a finding of intentional/willful misconduct

At page 2 of your letter you state that::

> "The Insurance Policy's Duty to Defend is further explained under the Exclusions, Section III(A) where it specifies that it will provide a defense for claims which fall within the contract Exclusions until there is a judgment, final adjudication, adverse admission or a finding of fact against the insured:
>
> > We shall not cover claims arising out of a dishonest, fraudulent, criminal or malicious act, error or omission, or any intentional or knowing violation of the law, or gaining of any profit or advantage to which you are not legally entitled; **however, we will defend suits alleging any of**

September 29, 2009
Page 6.

_____

> **the foregoing conduct until there is a judgment, final adjudication, adverse admission or finding of fact against you as to such conduct..."**

Contrary to your contention, the Policy does **not** provide that National Union will, in all instances, provide a defense until there is a finding against the insured. Rather, there is only one policy exclusion that contains such a provision – Exclusion A (the "Fraud Exclusion"). However, National Union is not denying coverage based on the Fraud Exclusion. Rather, National Union is denying coverage based on Exclusion D (the "Securities Exclusion"). The Securities Exclusion does not require that National Union provide a defense until there is a finding of intentional/knowing misconduct. Rather, Exclusion D applies if the claim "arises out of" the purchase/sale of securities and/or the violation of securities laws.

It is well established that: "Exclusions limit the scope of coverage provided and are to be read with the insuring agreement and independently of every other exclusion. *State Farm Mutual Ins. Co. v. Roe, 226 Mich. App. 258, 263 (1997)*. Exclusions are not to be read cumulatively. Rather, each exclusion is to be read independently of every other exclusion. *Hawkeye-Security Ins. C. v. Vector Construction Co., 185 Mich. App. 369, 384-385 (1990)*. Clear and specific exclusions must be given effect. An insurance company may not be held liable for a risk it did not assume. *Auto Owners Ins. Co. v Harrington,* 212 Mich. App. 686 (1995). Since every exclusion is to be read independently of every other exclusion, the finding requirement in the Fraud Exclusion set forth in Exclusion A cannot be read into the Securities Exclusion set forth in Exclusion D.

Although the sale of these securities was allegedly accomplished by means of various fraudulent representations thereby implicating the Fraud Exclusion, that does not change the fact that this claim arises out of the purchase/sale of securities and/or the alleged violation of securities laws within the meaning of Exclusion D. Although the Fraud Exclusion requires a finding of an intentional/knowing act before coverage can be denied, the Securities Exclusion does not. Since the Securities Exclusion set forth in Exclusion D does not impose any finding requirement, contrary to your contention, National Union does not have a duty to defend this claim until there is a finding.

**There is no duty to defend under Michigan Law**

In your letter, you have taken the position that Michigan law would apply in determining whether National Union has a duty to defend Ms. Redman in connection with this claim. Even assuming that were true, contrary to your contention, National Union would not have a duty to defend this claim under Michigan law. As you note, pursuant to Michigan law, like the vast majority of jurisdictions, the duty to defend is broader than the duty to indemnify and is determined by the allegations in the Complaint. *Celena Mutual Ins. Co. v Citizens Insurance Co. of America,* 133 Mich. App. 655 (1984). If there is any theory of relief that falls within the scope of the policy, a defense must be provided. *Schuler v Michigan Physicians Mutual Liability Co.,* 260 Mich. App. 492 (2004).

> "In some jurisdictions, including Michigan, this obligation has been extended to include the duty to defend if the insurer knows that a true but unpleaded fact or set of facts would bring the claim within

September 29, 2009
Page 7.

_____

> the coverage of the policy." *Kangas v Aetna Cas. & Sur. Co.,* 64
> Mich. App. 1, 5 (1975).

In this case, there is no theory of relief that falls within the scope of the policy, nor are there any unpled facts that would do so. As noted earlier, the theory of relief in this case is that various misrepresentations were made in connection with the sale of securities as a result of which the plaintiffs were damaged. Although the plaintiffs may allege in support of their request for relief against Ms. Redman that she is responsible for these misrepresentations because she incorporated and dissolved the entity that sold the securities, that does not change the fact that the entire claim is based upon the misrepresentations that were allegedly made in connection with the sale of securities. There is no theory of relief that can possibly be covered.

As explained by the Michigan Court of Appeals in *Fitch v State Farm Fire and Casualty Co.,* 211 Mich. App. 468, 471 (1995):

> "Whether an insurance carrier has a duty to defend its insured in
> an underlying tort action depends upon the allegations in the
> complaint. The duty to defend and indemnify is not based solely
> on the terminology used in the pleadings in the underlying action.
> The court must focus also on the cause of the injury to determine
> whether coverage exists. Thus, it appears that our inquiry is
> twofold. Does the claimed injury fall within the meaning of the
> terms used in the policy? If so, is the cause of the injury covered
> under the policy?" (Citations omitted.)

The cause of the plaintiffs' injuries in this case is the making of misrepresentations in connection with the sale of these securities. The cause of the plaintiffs' injuries is specifically excluded from coverage by Exclusion D. As the Michigan Court of Appeals and the Michigan Supreme Court have consistently found, if coverage is barred by an exclusion, as a matter of law, the insurer does not have a duty to defend its insured. (See, for example two of the cases you cited: *Schuler v Michigan Physicians Mutual Liability Co.,* 260 Mich. App. 492 (2004) and *Protective National Insurance Co. of Omaha v City of Woodhaven,* 438 Mich. 154 (1991).

## CONCLUSION

For the reasons detailed above, since this entire claim arises out of the violation of various securities laws and/or the purchase/sale of securities, coverage is barred by Exclusion D. Therefore, National Union does not have a duty to defend this claim on behalf of Ms. Redman. If you have any information which you believe impacts the foregoing analysis, please forward the same to the undersigned as soon as possible. Absent the receipt of such information, National Union will not be defending or indemnifying Ms. Redman with respect to this claim.

September 29, 2009
Page 8.

_____

Very truly yours,

MADDIN, HAUSER, WARTELL, ROTH & HELLER, P.C.

Harvey R. Heller

HRH/mmr
cc    Ms. Valerie Fletcher
      Mr. Robert Hershkowitz

867120 - 06527-0250

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN - SOUTHERN DIVISION

ROBERT GORDON, Receiver of the
Estate of GREGORY N. McKNIGHT,
LEGISI MARKETING, INC., AND
LEGISI HOLDINGS, L.LC.,

        Plaintiffs,

vs.

                                              Case No. 09-CV-10772
                                        Hon. George Caram Steeh

ELITE CONSULTING GROUP, LLC, a
Florida limited liability company, IVAN
MONSALVE a/k/a IVAN MONSALVES,
MARSHA FRIEDMAN, KAREN L. REDMAN,
TRICIA WITHERSPOON, JANE DOE, JOHN
DOE, and EDGETECH INTERNATIONAL, INC.,
a Nevada corporation,

        Defendants.

---

| | |
|---|---|
| Charles E. Murphy (P28909) | Nancy L. Kahn (P29907) |
| Edward J. Hood (P42953) | Francis G. Seyferth (P30885) |
| Clark Hill, PLC | Foster, Swift, Collins & Smith, P.C. |
| Attorneys for Plaintiff  Robert Gordon | Attorneys for Defendant Karen L. Redman |
| 151 S. Old Woodward Avenue, Suite 200 | 32300 Northwestern Highway, Suite 230 |
| Birmingham, MI 48009 | Farmington Hills, MI 48334 |
| 248-989-5879 / 248-988-2331 | 248-539-9900 / 248-538-3612 (Fax) |

---

## CERTIFICATE OF SERVICE

I hereby certify that on March 15, 2011 I served a copy of *Defendant Karen Redman's Response and Brief in Opposition to Plaintiffs' Motion to Shorten Time to Respond to Document Requests and Interrogatories* to:  Charles E. Murphy, Edward J. Hood, and Eric K. Shih, Attorneys for Plaintiff Robert Gordon, Clark Hill, PLC, 151 S. Old Woodward Avenue, Suite 200, Birmingham, MI 48009 by First-Class Mail.

                /s/Nancy L. Kahn
                Foster, Swift, Collins & Smith, P.C.
                32300 Northwestern Highway, Suite 230
                Farmington Hills, MI 48334
                248-539-9900
                nkahn@fosterswift.com

FOSTER SWIFT COLLINS & SMITH PC || ATTORNEYS